UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GOUYEN BROWN LOPEZ et al.,

    *Plaintiffs*,

v.

UNITED STATES OF AMERICA et al.,

    *Defendants*.

Civil Action No. 25-2408 (TJK)

## MEMORANDUM

Later this month, the Secretary of Agriculture plans to convey a parcel of land in Arizona containing an area known as Oak Flat to Intervenor-Defendant Resolution Copper Mining, LLC ("Resolution") under a law passed in 2014. 16 U.S.C. § 539p; ECF No. 1 ¶¶ 2, 77. Members of the Western Apache know Oak Flat as Chí'chil Biłdagoteel, and it is sacred to them. ECF No. 1 ¶¶ 1–2. Since Resolution plans to build a mine that will destroy the site, Plaintiffs brought this suit and moved for a preliminary injunction. *Id.* ¶¶ 1, 3. They argue that transferring the land to Resolution violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, the First Amendment, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

As Defendants point out, three other cases also challenging the transfer of Oak Flat to Resolution were brought in the District of Arizona in January 2021 and have been (and are being) litigated there. ECF No. 7 at 6–7. Indeed, in two of the cases, a preliminary injunction hearing is scheduled for August 6, 2025. *Id.* For that reason and others, they and Resolution move to transfer the case to the District of Arizona. The Court will grant the motions and transfer the case forthwith.

**I.      Legal Standard**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court's analysis under § 1404(a) proceeds in two steps. "A court must first determine whether the transferee district is one where the action might have been brought, and then must balance the private and public interests involved in the proposed transfer to determine whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer." *City of W. Palm Beach v. U.S. Army Corps of Eng'rs*, 317 F. Supp. 3d 150, 153 (D.D.C. 2018) (cleaned up).

District courts have "broad discretion" in adjudicating motions to transfer, *McGovern v. Burrus*, 407 F. Supp. 2d 26, 27 (D.D.C. 2005), and must do so with an "individualized, case-by-case consideration," *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Although the moving party bears the burden of establishing that transfer is proper, "courts in this circuit are instructed to guard against 'the danger that a plaintiff might manufacture venue in the District of Columbia . . . [b]y naming high government officials as defendants.'" *Ctr. for Biological Diversity v. Ross*, 310 F. Supp. 3d 119, 124 (D.D.C. 2018) (quoting *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)).

**II.      Analysis**

The parties do not dispute that the threshold query—whether the case could have been brought in the proposed venue—is satisfied. Thus, the only question is whether Defendants and Intervenor-Defendant have met their burden of showing, after weighing the relevant private and public interests, that considerations of convenience and the interest of justice support a transfer. For the reasons below, the Court agrees that they have and that transfer to the District of Arizona is warranted.

### A. Private-Interest Factors

Courts consider six private-interest factors in a § 1404(a) analysis: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, particularly if important witnesses may be unavailable to testify live in one of the districts; and (6) the ease of access to sources of proof. *City of W. Palm Beach*, 317 F. Supp. 3d at 154.

The Court considers the first three factors together because they are interrelated. Although a plaintiff's choice of forum is usually given "substantial deference," several factors may curtail that deference. *City of W. Palm Beach*, 317 F. Supp. 3d at 154. To begin, "plaintiff's choice is entitled to substantially less deference when plaintiff chooses a forum that is not its home forum." *Alabama v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 63 (D.D.C. 2018) (internal quotations omitted). Plaintiffs do not reside in this district. *See* ECF No. 1 at 1. They therefore "need not be afforded the substantial deference given to litigants in choosing their home forum." *Niagara Pres., Coal., Inc. v. FERC*, 956 F. Supp. 2d 99, 104 (D.D.C. 2013).

Plaintiffs' choice of forum is diminished further because "the majority of operative facts took place outside the District of Columbia." *Ross*, 310 F. Supp. 3d at 125 (quotation omitted). For example, Plaintiffs allege that Defendants violated NEPA, the NHPA, and the APA in issuing its Environmental Impact Statement ("EIS"). ECF No. 1 ¶¶ 129–56. Yet as Defendants explain—and Plaintiffs do not meaningfully dispute—the "vast majority of the substantive work and public participation on the Forest Service's NEPA review and NHPA consultation occurred in Arizona." ECF No. 23 at 13. Indeed, the "decisionmaker who will sign the Forest Service's final record of decision . . . is the Forest Supervisor for the Tonto National Forest," in Arizona. *Id.* True, Congress passed a law mandating the transfer of Oak Flat, and some of Plaintiffs' claims challenge the constitutionality of that law. But "[t]here is certainly no reason why all cases involving the

construction or constitutionality of a federal statute should be litigated in the District of Columbia." *Starnes v. McGuire*, 512 F.2d 918, 925 n.7 (D.C. Cir. 1974). And though Plaintiffs note that some high-ranking federal officials in the District may have had some role in finalizing the EIS and conveying Oak Flat to Resolution, ECF No. 20 at 15–16, "[i]t is settled law that 'mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative.'" *Alabama*, 304 F. Supp. 3d at 64 (quoting *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002)). "Instead, there must be a real connection between the District of Columbia and this litigation that goes beyond the presence of federal agency officials who are generally regulating and overseeing the administrative process." *Id.* (cleaned up). But to repeat, Plaintiffs do not meaningfully contest that most of the actions necessary to facilitate the transfer of Oak Flat, including the production of the EIS, occurred in Arizona.

Moreover, while a defendant's choice of forum is not usually afforded deference like a plaintiff's, courts find that this factor is relevant when the defendant's preferred forum is the same as where the claims arose. *See City of W. Palm Beach*, 317 F. Supp. 3d at 155 (finding that defendants "proffered legitimate reasons for preferring" their chosen forum because of its close nexus with the factual allegations); *see also Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (finding that defendants "have legitimate reasons for preferring the [transferee district]" because the permits at issue were located there). And again, Plaintiffs' claims under NEPA, the NHPA, and the APA all turn on actions federal employees took while preparing the EIS in Arizona. Thus, since most of the relevant decision-making processes giving rise to the claims unfolded in Arizona, and since Defendants seek transfer there, both the "defendant's choice of forum" and "where the claim arose" strongly support transfer.

The last three "convenience" factors—convenience of the parties, witnesses, and access to sources of proof—are neutral. "In an APA case, 'neither the convenience of the parties and

4

witnesses nor the ease of access to sources of proof weighs heavily in the analysis.'" *Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) (quoting *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C.2010)); *see also Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. 19-cv-3144, 2019 WL 6035356, at *6 (D.D.C. Nov. 14, 2019) (holding the same for claims arising under the APA and NEPA). Because this case "involves judicial review of an administrative decision . . . neither discovery, witnesses, nor a trial will be required." *Alabama*, 304 F. Supp. 3d at 66 (quotation omitted).

In sum, the Court finds that the private-interest factors weigh modestly in favor of transfer.

**B.     Public-Interest Factors**

As for the public-interest factors, the Court must consider: (1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *City of W. Palm Beach*, 317 F. Supp. 3d at 156.

The first factor strongly favors transfer, for purposes of judicial economy and to minimize the risk of competing obligations on Defendants that inconsistent judgments could cause. As Plaintiffs themselves concede, three other cases also challenging the transfer of Oak Flat to Resolution were brought in the District of Arizona, in part by other members of the Western Apache, and have been proceeding there since 2021. ECF No. 20 at 10–11. In two such cases, after multiple rounds of briefing, a preliminary injunction hearing is scheduled for August 6, 2025. ECF No. 7 at 7. Even though the precise contours of the claims and legal theories in those other cases may not be identical to those present here, they cover broadly the same areas of law—including the First Amendment, RFRA, NEPA, and the NHPA—and involve the same administrative record. *See Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 27 (D.D.C. 2002) (finding transfer to a district with pending related litigation warranted because, even though "the posture" of the related

5

case "may be somewhat different," "it still involves central questions regarding the future of" the property at the core of both cases). "When lawsuits involving the same controversy are filed in more than one jurisdiction, the general rule is that the court that first acquired jurisdiction has priority." *Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D.D.C. 2001). Thus, "the presence of closely related litigation in the District of" Arizona is a "significant factor weighing in favor of transferring this case." *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007). "[G]iven the multiple prior lawsuits in the District of [Arizona] challenging" the transfer of Oak Flat, "it is clear that the transferee court has relevant knowledge of the parties and facts that favors transfer." *Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior*, No. 23-cv-3126, 2024 WL 756602, at *4 (D.D.C. Feb. 23, 2024) (internal quotation marks and quotation omitted).

This earlier-filed litigation also factors into the Court's analysis because it raises the specter of forum-shopping. "[T]he transfer provisions in the U.S. Code, which grew out of the common law doctrine of *forum non conveniens,* were in part intended to prevent forum shopping." *Schmid Lab'ys, Inc. v. Hartford Acc. & Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986). Thus, courts in this district have found "that transfer is warranted in the interest of justice" when plaintiffs sue "in the District of Columbia only in order to benefit from this Circuit's" precedents. *Id.* at 736.

As Defendants point out, Plaintiffs' decision to sue in this district follows a Ninth Circuit decision in one of the three suits pending there that would appear to doom many of their First Amendment and RFRA claims. *See Apache Stronghold v. United States* (*Apache I*), 101 F.4th 1036 (9th Cir. 2024). The Court expresses no views on the Ninth Circuit's decision but notes that it has been criticized. *See Apache Stronghold v. United States* (*Apache II*), 145 S. Ct. 1480 (2025) (Gorsuch, J., dissenting from the denial of certiorari). Still, under these circumstances—where identically situated plaintiffs have litigated (and are litigating) these and related claims in Arizona

6

in lawsuits filed years ago, the Court cannot "encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case." *Schmid Lab'ys, Inc.*, 654 F. Supp. at 737.

The second factor is neutral. Though the parties dispute the relative congestions of this district and the District of Arizona, "[g]iven the lack of evidence that this court's docket is substantially more congested than that of the District of Arizona," or vice versa, "the [C]ourt holds that this factor does not" weigh in either side's favor. *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 178 (D.D.C. 2009).

The final factor—the local interest in deciding local controversies at home—is "perhaps [the] most important factor." *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012); *see also Alabama*, 304 F. Supp. 3d at 67 ("The interest in having local controversies decided at home is preeminent." (cleaned up)). And local interest is at its zenith when the challenged action, the decision-making process that led to it, and its impact, all occur locally. *See Alabama*, 304 F. Supp. 3d at 67. Such is the case here. "The controversy is centered on property located in [Arizona], and land commonly has been considered a local interest." *Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 99 (D.D.C. 2009). Furthermore, as explained above, most of the major steps in the decision-making processes—especially for purposes of Plaintiffs' NEPA, NHPA, and APA claims—occurred in Arizona. And the effects of the land transfer would be most directly felt by Arizona residents because it would reshape "the local economy" and environment. *Id.*; *see also Alaska Indus.*, 2024 WL 756602, at *3 ("[T]he Refuge is located in Alaska, and therefore any decisions regarding oil and gas exploration in the region will have acute economic and environmental impacts in Alaska."). Even assuming the decision to transfer Oak Flat is one facet of a broader national policy to increase resource

extraction, "[t]he controversy is localized in the sense that it involves [Arizona] lands, hence there is a strong local interest in having this case heard in [Arizona]." *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004).  Moreover, "the pendency of multiple court cases challenging the project 'demonstrates that other parties in [the transferee district] are interested' in the controversy." *Kinsella v. Bureau of Ocean Energy Mgmt.*, No. 22-cv-2147, 2022 WL 16852674, at *2 (D.D.C. Nov. 10, 2022) (alteration in original) (quoting *Villa v. Salazar*, 933 F. Supp. 2d 50, 56 (D.D.C. 2013)).  The Court agrees that "this case should be litigated within the view and reach of the people who will be most vitally affected by its outcome." *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, No. 21-cv-3276, 2022 WL 3906934, at *5 (D.D.C. June 27, 2022) (quotation omitted).

In response, Plaintiffs argue that this controversy "easily qualifies as a case of national significance." ECF No. 20 at 17.  But "even accepting that this case touches upon some national concerns, it is beyond cavil that the [conveyance of Oak Flat] most *directly* affects [Arizona] lands, livelihoods, waters, and wildlife." *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 117 (D.D.C. 2015).  "The implications of a decision resolving this dispute will be felt most acutely in [Arizona] where local citizens are directly affected and therefore the local interest in this case outweighs the national interest." *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 103 (D.D.C. 2013).

Thus, the Court finds that the public-interest factors weigh strongly in favor of transfer, and considering both the private and public factors together, transfer is warranted.

## III.     Conclusion

For all the above reasons, the Court will grant Defendants' and Intervenor-Defendant's Motions to Transfer Venue, ECF No. 7, 12.  A separate order will issue transferring the case forthwith.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 1, 2025