ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

ERIKA NORMAN (CA Bar 268425)
ANGELA ELLIS (DC Bar 1670713)
GREGORY M. CUMMING (DC Bar 1018176)
Natural Resources Section
150 M St. NE, Third Floor
Washington, D.C. 20002
(202) 305-0475 (Norman)
Erika.Norman@usdoj.gov
Angela.Ellis@usdoj.gov
Gregory.Cumming@usdoj.gov

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION**

GOUYEN BROWN LOPEZ, et al.,

    *Plaintiffs*,

  v.

UNITES STATES OF AMERICA, et al.,

    *Federal Defendants*.

Case No. 2:25-cv-2758-DWL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARDS ..................................................................................................... 2

ARGUMENT .................................................................................................................... 3

    I.    Plaintiffs Cannot Show a Likelihood of Success on Their Claims. ............. 3

        A.    Plaintiffs' Claims Fail on Multiple Threshold Issues. ....................... 3

            1.    The land exchange is not a reviewable action under the APA .............................................................................................. 3

            2.    Plaintiffs lack standing to challenge the land exchange under NEPA and the NHPA because the Forest Service must transfer title. ................................................................... 4

            3.    The Act compels transfer of title regardless of any challenge to the FEIS. ............................................................. 5

            4.    NEPA does not apply to the non-discretionary transfer of title. .................................................................................... 8

            5.    The Court lacks jurisdiction over Plaintiffs' challenges to the FEIS and Draft ROD ..................................................... 8

            6.    Plaintiffs' RFRA and Free Exercise claims are time-barred. ...................................................................................... 9

        B.    Plaintiffs' Claims Fail on the Merits. ............................................. 10

            1.    Plaintiffs' RFRA and Free Exercise claims fail under controlling law. ................................................................... 11

            2.    The FEIS complies with NEPA. ........................................... 12

            3.    Plaintiffs' NHPA Claim Lacks Merit .................................. 14

    II.    The Remaining Factors Do Not Tip Sharply in Plaintiffs' Favor. .............. 16

        A.    Plaintiffs Cannot Meet Their Burden to Establish Irreparable Harm. ............................................................................................ 16

i

1

CONCLUSION ......................................................................................................... 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alden v. AECOM Tech. Corp.*,
No. 18-3258, 2019 WL 13065377 (N.D. Cal. Mar. 12, 2019)....................................... 10

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ...................................................................................... 3

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987) ..................................................................................................... 17

*Apache Stronghold v. United States*,
519 F. Supp. 3d 591 (D. Ariz. 2021) ............................................................................ 5

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
729 F.3d 937 (9th Cir. 2013) ...................................................................................... 17

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ...................................................................................... 2

*Belagu v. Inslee*,
975 F.3d 940 (9th Cir. 2020) ...................................................................................... 10

*Bennett v. Spear*,
520 U.S. 154 (1997) ..................................................................................................... 8

*Bond v. United States*,
572 U.S. 844 (2014) ..................................................................................................... 6

*Burkman v. Bureau of Prisons*,
No. 23-506, 2024 WL 4135798 (D. Conn. Sept. 10, 2024) ......................................... 10

*Coal. Against a Raised Expressway, Inc. v. Dole*,
1986 U.S. Dist. LEXIS 30976 (S.D. Ala. Oct. 20, 1986) ............................................ 16

*Coal. Against a Raised Expressway, Inc. v. Dole*,
835 F.2d 803 (11th Cir. 1988) .................................................................................... 16

*Concerned Citizens & Retired Miners Coal. v. U.S. Forest Serv.*,
279 F. Supp. 3d 898 (D. Ariz. 2017) .......................................................................... 16

*Concerned Citizens All., Inc. v. Slater*,
176 F.3d 686 (3d Cir. 1999) ...................................................................................... 16

*CTIA - The Wireless Ass'n v. FCC*,
466 F.3d 105 (D.C. Cir. 2006) .................................................................................... 15

iii

*Defend Arlington v. U.S. Dep't of Def.*,
2023 WL 8600567 (D.D.C. Dec. 12, 2023) ...................................................... 4

*Dep't of Transp. v. Pub. Citizen*,
541 U.S. 752 (2004) ...................................................................................... 8

*Envt'l Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
36 F.4th 850 (9th Cir. 2022) ....................................................................... 8

*Fund for Animals, Inc. v. Lujan*,
962 F.2d 1391 (9th Cir. 1992) .................................................................... 13

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
590 U.S. 432 (2020) ...................................................................................... 6

*Hall v. Norton*,
266 F.3d 969 (9th Cir. 2001) ....................................................................... 5

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) ..................................................................... 11

*Heckler v. Chaney*,
470 U.S. 821 (1985) ...................................................................................... 3

*In re Zermeno-Gomez*,
868 F.3d 1048 (9th Cir. 2017) ..................................................................... 11

*Jewel v. NSA*,
673 F.3d 902 (9th Cir. 2011) ....................................................................... 4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 4

*Mahmoud v. Taylor*,
145 S. Ct. 2332 (2025) ........................................................................... 11, 12

*Muckleshoot Indian Tribe v. U.S. Forest Serv.*,
177 F.3d 800 (9th Cir. 1999) ....................................................................... 15

*Nat'l Fam. Farm Coal. v. EPA*,
966 F.3d 893 (9th Cir. 2010) ....................................................................... 5

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
762 F.2d 1374 (9th Cir. 1985) ..................................................................... 16

*Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*,
625 F.3d 1092 (9th Cir. 2010) ..................................................................... 9

*Planned Parenthood Great N.W. v. Labrador*,
122 F.4th 825 (9th Cir. 2024) ..................................................................... 3

iv

*Polselli v. IRS*,
   598 U.S. 432 (2023) ............................................................................................. 7

*Pouncil v. Tilton*,
   704 F.3d 568 (9th Cir. 2012) ............................................................................ 10

*Robertson v. Methow Valley Citizens Council*,
   490 U.S. 332 (1989) ........................................................................................... 12

*Roe v. Critchfield*,
   131 F.4th 975 (9th Cir. March 20, 2025) ......................................................... 3

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   590 U.S. 212 (2020) ............................................................................................. 7

*Salmon Spawning & Recovery All. v. Gutierrez*,
   545 F.3d 1220 (9th Cir. 2008) ........................................................................... 5

*San Carlos Apache Tribe v. United States*,
   417 F.3d 1091 (9th Cir. 2005) ........................................................................... 4

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*,
   145 S. Ct. 1497, 221 L. Ed. 2d 820 (2025) ............................................ 8, 9, 12, 14

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................................... 13

*Vartelas v. Holder*,
   566 U.S. 257 (2012) ........................................................................................... 13

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ........................................................................................... 12

*WildEarth Guardians v. USDA*,
   795 F.3d 1148 (9th Cir. 2015) ........................................................................... 4

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) ...................................................................................... 2, 3, 17

*Yong v. INS*,
   208 F.3d 1116 (9th Cir. 2000) ......................................................................... 11

*Ysleta Del Sur Pueblo v. Texas*,
   596 U.S. 685 (2022) ............................................................................................. 7

**Statutes**

16 U.S.C. § 539p ..................................................................................................... 1, 9

16 U.S.C. § 539p(c)(1) ............................................................................................. 5

v

16 U.S.C. § 539p(c)(10) ................................................................. 4, 5, 6

16 U.S.C. § 539p(c)(9) ........................................................................ 6

16 U.S.C. § 539p(c)(9)(A) ................................................................... 8

16 U.S.C. § 539p(c)(9)(B) ................................................................ 6, 9

16 U.S.C. § 539p(c)(9)(D) .................................................................... 6

16 U.S.C. § 539p(i)(3) ....................................................................... 17

28 U.S.C. § 1658(a) .......................................................................... 10

28 U.S.C. § 2401(a) .......................................................................... 10

42 U.S.C. § 4336a(e)(1)(A) ................................................................ 12

42 U.S.C. § 4336a(g)(1)(A) ............................................................... 12

5 U.S.C. § 704 ............................................................................... 8, 9

5 U.S.C. § 706(2) ............................................................................... 3

54 U.S.C. § 306108 .......................................................................... 15

Building United States Infrastructure through Limited Delays and Efficient Reviews Act
    of 2023, Pub. L. 118–5, Div. C, Tit. III, § 321, 137 Stat. 38–39 (2023)...................... 12

**Regulations**

36 C.F.R. § 218 (2025) ........................................................................ 9

36 C.F.R. § 800.7(a) .......................................................................... 16

36 C.F.R. § 800.7(c)(4) ...................................................................... 16

# INTRODUCTION

This case is the fourth[1] to challenge the land exchange Congress mandated in 2014 in the Southeast Arizona Land Exchange and Conservation Act ("Act" or "Land Exchange Act"), 16 U.S.C. § 539p. Like those before them, Plaintiffs here seek a preliminary injunction to stop the U.S. Forest Service from complying with its statutory obligation to transfer title to federal lands to Resolution Copper. But also like the others, Plaintiffs do not carry their burden to justify the extraordinary relief they seek.

*First*, Plaintiffs' claims fail at the outset for the same threshold reasons as those raised by the San Carlos Apache Tribe ("Tribe") and Arizona Mining Reform Coalition ("AMRC"): (1) the land exchange is a non-discretionary action that is not reviewable under the APA; (2) they lack standing to challenge the land exchange under NEPA and the NHPA because the injuries they allege related to the land exchange cannot be redressed through more environmental analysis or consultation; (3) the text and structure of the Act are clear Congress intended to prevent title transfer from being delayed by judicial review of the environmental analysis, which could take years; (4) the Act's reference to NEPA's legal requirements did not override the ordinary rule that NEPA does not apply to non-discretionary actions like this transfer of title; (5) for any actions within the agency's discretion, Plaintiffs fail to identify a judicially reviewable final agency action under the APA and (6) Plaintiffs' RFRA and Free Exercise claims are facially time-barred.

*Second*, Plaintiffs' claims fail on the merits. Their RFRA and Free Exercise claims have been rejected by the en banc Ninth Circuit in a binding decision that is dispositive here. Nothing in the Supreme Court's recent *Mahmoud* decision alters that analysis. Their NEPA claim fails because: (i) Congress's 2023 NEPA amendments do not apply retroactively to NEPA reviews that were already underway when the amendments were

---

[1] The three previous cases are: *Apache Stronghold v. United States*, No. 21-cv-50-SPL (Jan. 12, 2021 D. Ariz.); *San Carlos Apache Tribe v. United States Forest Service* ("*SCAT*"), No. 2:21-cv-68-DWL (Jan. 14, 2021 D. Ariz.); and *Arizona Mining Reform Coalition v. United States Forest Service* ("*AMRC*"), No. 21-cv-122-DWL (Jan. 22, 2021 D. Ariz.).

passed (nor does the EIS's length harm Plaintiffs); and (ii) the FEIS appropriately analyzed all required alternative mining techniques. And their NHPA claim fails because the Forest Service fully complied with its consultative obligations.

*Third*, Plaintiffs cannot establish irreparable harm because injuries to their access interests are not redressable and none of their alleged environmental injuries are imminent. *Fourth*, Congress in 2014 affirmatively approved the land exchange, and the administration has identified the Resolution Copper Project as a priority critical-minerals project that is in the economic and national security interests of the United States. The equities and the public interest thus weigh in favor of denying Plaintiffs' request.

## BACKGROUND[2]

Plaintiffs are individual Apache women and girls who allege they worship at Oak Flat and will be unable to practice their religion following the Land Exchange. *E.g.*, Dkt. No. 1 ¶¶ 1, 45. Plaintiffs filed this action in the U.S. District Court for the District of Columbia on July 24, 2025—more than four years after the related cases in this District. *See* Dkt. No. 1. Like Apache Stronghold and the Tribe, Plaintiffs contend that the Land Exchange Act violates RFRA and the First Amendment. *E.g.*, *id.* ¶¶ 101–128. And like the Tribe and AMRC, Plaintiffs bring NHPA and NEPA claims. *Id.* ¶¶ 129–151.

Plaintiffs moved for a preliminary injunction on July 25. Dkt. 15-1 ("Mot."). On August 1, D.C. District Judge Kelly transferred the case to this District. Dkt. Nos. 27–28.

## LEGAL STANDARDS

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Winter*

---

[2] Federal Defendants incorporate the Factual and Procedural Background from their consolidated Opposition to the Motions for Preliminary Injunction filed in *SCAT* and *AMRC*. *SCAT,* No. 21-cv-68-DWL (D. Ariz.), Dkt. No. 114 at 3–5.

*v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). "As a general matter, district courts *must* consider all four *Winter* factors." *Id.* (quotation omitted).[3] "The third and fourth factors, harm to the opposing party and weighing the public interest, merge when the Government is the opposing party." *Roe by and through Roe v. Critchfield*, 131 F.4th 975, 985 (9th Cir. March 20, 2025) (quotation omitted).

## ARGUMENT

## I.    <u>Plaintiffs Cannot Show a Likelihood of Success on Their Claims</u>.

Dispositive to their request here, Plaintiffs fail to demonstrate the clear likelihood of success necessary for emergency injunctive relief. First, Plaintiffs' claims fail at the outset: the land transfer is a nondiscretionary agency action not subject to challenge under the APA, they similarly lack standing to challenge a nondiscretionary agency action, and otherwise assert time-barred challenges to the Land Exchange Act. Second, Plaintiffs' claims fail on the merits: their RFRA and Free Exercise claims are contrary to binding precedent and their NEPA and NHPA claims amount to non-cognizable pin-prick criticisms of the Service's thorough environmental and historic preservation review.

### A. Plaintiffs' Claims Fail on Multiple Threshold Issues.

#### 1. The land exchange is not a reviewable action under the APA.

APA claims under 5 U.S.C. § 706(2) allow a court to set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." As that standard of review makes clear, a challenge under § 706(2) allows a court to "judge the agency's exercise of discretion." *Heckler v.*

---

[3] Some Ninth Circuit panels have applied a "sliding scale' approach, in which 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'" *Planned Parenthood Great N.W. v. Labrador*, 122 F.4th 825, 844 (9th Cir. 2024). Even assuming that test conforms to *Winter*, Plaintiffs are not entitled to emergency relief because they have failed to establish any immediate irreparable injury. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (an injunction may be appropriate if the movant shows "serious questions" on the merits, *but only if* it carries its burden on the other factors and if the balance of hardships "tips sharply" in its favor.).

1   *Chaney*, 470 U.S. 821, 830 (1985). Where, as here, "the government does not have

2   discretion or decisionmaking power, the APA is not the appropriate vehicle for review."

3   *Defend Arlington v. U.S. Dep't of Def.*, 2023 WL 8600567, at *12 (D.D.C. Dec. 12, 2023)

4   (dismissing plaintiffs' claims against the Department of Defense because the agency was

5   merely implementing Congress's directive). Congress required the Forest Service to carry

6   out the land exchange. 16 U.S.C. § 539p(c)(10). Because the Service lacks discretion with

7   respect to compliance with that statutory mandate, Plaintiffs cannot state a cognizable APA

8   challenge to the land exchange.[4]

9           **2.  Plaintiffs lack standing to challenge the land exchange under NEPA and
10               the NHPA because the Forest Service must transfer title.**

11          Similarly, Plaintiffs lack standing to assert challenges under NEPA and the NHPA

12  because the injury that Plaintiffs trace to the land exchange is not redressable. The Forest

13  Service is required by statute to transfer title, and no quantum of additional NEPA review

14  or NHPA consultation can alter that obligation.

15          To have standing under Article III, a plaintiff must have: (1) a concrete and

16  particularized injury; that is (2) caused by the challenged conduct; and (3) likely

17  redressable by a favorable judicial decision. *Jewel v. NSA*, 673 F.3d 902, 908 (9th Cir.

18  2011). "The party invoking federal jurisdiction bears the burden of establishing these

19  elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

20          To satisfy the redressability prong of the standing inquiry, plaintiffs must show that

21  the relief they seek is both (1) substantially likely to redress their injuries; and (2) within

22  the district court's power to award. *Id*. Where, as here, a plaintiff asserts a procedural injury

23  under NEPA or the NHPA, the Ninth Circuit applies a "relaxed" redressability

24  requirement. *WildEarth Guardians v. USDA*, 795 F.3d 1148, 1154 (9th Cir. 2015). But

25  relaxed does not mean toothless. While Plaintiffs "need not show that further [NEPA]

26  analysis by the government *would* result in a different conclusion[,]" they must still show

27

28  ────────────────
    [4] NEPA and NHPA claims are all reviewed under the APA. *San Carlos Apache Tribe v.
    United States*, 417 F.3d 1091, 1097 (9th Cir. 2005).

that the Forest Service "*could* be influenced by the environmental considerations that [the statute] requires an agency to study." *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001) (emphasis added). In other words, redressability in a NEPA case stems from the possibility "that the relief requested—that the agency follow the correct procedures—*may* influence the agency's ultimate decision of whether to take or refrain from taking a certain action." *Nat'l Fam. Farm Coal. v. U.S. EPA*, 966 F.3d 893, 910 (9th Cir. 2010) (quotation omitted).

The Land Exchange Act provides that "the Secretary is authorized and *directed* to convey to Resolution Copper, all right, title, and interest of the United States in and to the Federal land." 16 U.S.C. § 539p(c)(1) (emphasis added); *see also id.* § 539p(a) ("The purpose of this section is to authorize, direct, facilitate, and expedite the exchange of land between Resolution Copper and the United States."). Once the Final Environmental Impact Statement ("FEIS") has been published, the United States "shall" transfer title to Resolution Copper within sixty days. *Id.* § 539p(c)(10). The Forest Service does not have discretion to take another course, and additional environmental review could not prompt the agency to decide not to complete the land exchange. It follows that any injury caused by the land exchange is not redressable by an order requiring additional NEPA analysis or NHPA consultation.[5] The Court acknowledged this in the related *Apache Stronghold* case, recognizing that the plaintiff "likely lack[ed] standing to contest the publication of the FEIS." 519 F. Supp. 3d 591, 609 (D. Ariz. 2021). Because no order requiring additional NEPA review can redress the injuries Plaintiffs allege, they lack standing.

**3. The Act compels transfer of title regardless of any challenge to the FEIS.**

Even if the Court finds the FEIS to be a final agency action, the text of the Land

---

[5] *Salmon Spawning & Recovery All. v. Gutierrez* is illustrative. 545 F.3d 1220 (9th Cir. 2008). There, plaintiffs sought to invalidate a Biological Opinion ("BO") for a fishing treaty with Canada, alleging federal agencies failed to follow proper consultation. *Id.* at 1226. The Ninth Circuit held that the plaintiffs did not meet the redressability element of standing because the court could not "undo the Treaty[,]" and setting aside the BO would not "remedy the harm asserted." *Id.* at 1227. So to here, no further NEPA review or additional consultation can alter the Forest Service's mandatory duty to transfer the land.

Exchange Act makes clear that Congress never intended judicial review of the FEIS to serve as a substantive roadblock to the transfer of title. While Congress required the preparation of an EIS, 16 U.S.C. § 539p(c)(9), the exchange is not contingent on that analysis. Rather, as the statute makes plain, the FEIS serves:

> as the basis for all decisions under Federal law related to the proposed mine and the Resolution mine plan of operations and any related major Federal actions significantly affecting the quality of the human environment, including the granting of any permits, rights-of-way, or approvals for the construction of associated power, water, transportation, processing, tailings, waste disposal or other ancillary facilities.

*Id.* § 539p(c)(9)(B).

The land exchange is not among the decisions for which the FEIS serves as a prerequisite. Congress cabined the agency's ability to conduct additional review of the land exchange, providing that the agency could "us[e] separate environmental review documents prepared in accordance with [NEPA] or other applicable laws" so long as those reviews did not involve "the land exchange" or "the extraction of minerals in commercial quantities by Resolution Copper on or under the Federal land." *Id.* § 539p(c)(9)(D). In other words, the text reflects that Congress mandated an environmental review for the express purpose of guiding the future and ancillary agency decisions where the Forest Service enjoys discretion—*e.g.*, authorizing rights of way and permits for mining-related infrastructure on federal land—not to obviate or constrain the Forest Service's obligation to carry out the exchange itself. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 440 (2020) ("[I]n general, a matter not covered is to be treated as not covered." (quotation omitted)).

Further, Congress expressly imposed a time limitation on title transfer: it must proceed within sixty days after the Forest Service publishes the FEIS. 16 U.S.C. § 539p(c)(10). The practical effect is that title will necessarily be transferred before any judicial challenge to the FEIS could be resolved, or for that matter, before any Final Record of Decision ("ROD") could issue. Congress would have understood this when it enacted the Land Exchange Act. *Bond v. United States*, 572 U.S. 844, 857 (2014) ("Part of a fair

1  reading of statutory text is recognizing that Congress legislates against the backdrop of
2  certain unexpressed presumptions."). Together, subsections (c)(9) and (c)(10) evince
3  Congress' intent to expedite the land exchange and prevent an endless series of
4  environmental reviews from frustrating the purpose of the Act.

5      Plaintiffs offer no persuasive contrary reading. Instead, they claim that "[o]nce the
6  Secretary publishes a NEPA-compliant EIS, [the Act] provides that 'the Secretary shall
7  convey all right, title, and interest of the United States' in Oak Flat 'to Resolution Copper'
8  within '60 days.'" Mot. 14 (quoting 538 U.S.C. § 539p(c)(10)). Rather than contend with
9  the statute's actual text, which states that "[n]ot later than 60 days *after the date of the*
10 *publication of the final environmental impact statement*, the Secretary shall convey all
11 right, title, and interest of the United States in and to the Federal land to Resolution
12 Copper," Plaintiffs represent that the 60-day deadline is triggered by "a NEPA-compliant
13 EIS." Mot. 27. But that reads in a prerequisite of judicial review that is absent from the
14 text. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020) ("Nor does this
15 Court usually read into statutes words that aren't there.")

16     Plaintiffs' reading also defies common sense. If Congress had conditioned the land
17 exchange on a final judicial finding that the FEIS is sufficient, then—so long as a party
18 challenged the FEIS—the land exchange would inevitably be delayed pending district court
19 proceedings and any appeal. That reading would render subsection (c)(10) meaningless,
20 because there would be no realistic scenario in which the land exchange could proceed
21 within sixty days of publication of the FEIS if a lawsuit were filed. Such an interpretation
22 would violate well settled principles of statutory interpretation that require this Court to
23 "aim to giv[e] effect to every clause and word of a statute." *Polselli v. IRS*, 598 U.S. 432,
24 441 (2023) (alteration in original) (quotation omitted); *Ysleta Del Sur Pueblo v. Texas*, 596
25 U.S. 685, 698–99 (2022) ("[W]e must normally seek to construe Congress's work so that
26 effect is given to all provisions, so that no part will be inoperative or superfluous, void or
27 insignificant." (quotation omitted)).

28     In sum, the best reading of the Act, which takes into account the text, as well as the

structure and intent of the statute as a whole—including both subsections (c)(9) and (c)(10)—is that Congress required the Forest Service to publish an FEIS before consummating the land exchange, while expressly ensuring that the land exchange itself would not be delayed by, or be contingent upon, judicial review of the FEIS.

### 4. NEPA does not apply to the non-discretionary transfer of title.

Even if Plaintiffs clear the hurdles imposed by the APA and Article III, NEPA still does not apply to the non-discretionary transfer of title. The Land Exchange Act directs the Forest Service to "carry out the land exchange in accordance with the requirements of [NEPA]." 16 U.S.C. § 539p(c)(9)(A). NEPA does not apply in the absence of agency discretion. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 769 (2004) ("NEPA's 'rule of reason' [does not] require an agency to prepare a full EIS due to the environmental impact of an action it could not refuse to perform."). The 2023 amendments to NEPA codified this rule by exempting "activities or decisions that are non-discretionary" from NEPA's definition of a "major federal action." 42 U.S.C. § 4336e(10)(B)(vii).

### 5. The Court lacks jurisdiction over Plaintiffs' challenges to the FEIS and Draft ROD

The Court lacks jurisdiction to hear Plaintiffs' challenges to any discretionary agency actions informed by the FEIS because neither the FEIS nor the Draft ROD ("DROD") is a final agency action under the APA. *Envt'l Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 867 (9th Cir. 2022) (noting APA's final agency action requirement is jurisdictional). The APA authorizes judicial review only of "final agency action." 5 U.S.C. § 704. A final agency action must (1) "mark the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

The FEIS at issue here, which was issued in conjunction with a DROD subject to administrative objections, does not meet either prong of the *Bennett* test. Because NEPA is a procedural statute designed "to inform agency decisionmaking," *Seven Cnty.*, 145 S.

8

Ct. at 1507, an EIS is, by extension, a procedural tool to inform an agency's final decision, not the decision itself. *Id.* at 1514 ("[C]ourts . . . must keep in mind that review of an agency's EIS is not the same thing as review of the agency's final decision concerning the project.").[6] Similarly, the Draft ROD is subject to a 45-day "predecisional objection process." DROD at vi.[7] Before issuing a Final ROD, the Forest Service must consider and provide written responses to objections. 36 C.F.R. pt 218 (2025).

Thus, neither document represents the consummation of any decisionmaking process regarding any discretionary decisions before the agency. A contrary interpretation would render the entire objection process meaningless and would run contrary to the plain text of the Act, which provides that the FEIS "be used *as the basis for all decisions* under Federal law related to the proposed mine and the Resolution mine plan of operations." 16 U.S.C. § 539p(c)(9)(B) (emphasis added). Similarly, both the FEIS and the ROD also fail the second prong of the *Bennett* test, because legal consequences will not flow until a Final ROD issues which "solidifie[s]," the FEIS. *Or. Nat. Desert Ass'n*, 625 F.3d at 1118.

Finally, to the extent Plaintiffs' NEPA claim goes to the land exchange itself, the agency is not "deciding" to transfer title to the federal lands to Resolution Copper and therefore the FEIS cannot constitute the "consummation" of any agency decision-making process. The agency cannot "decide" to transfer title; it is statutorily obligated to do so.

### 6. Plaintiffs' RFRA and Free Exercise claims are time-barred.

Plaintiffs' RFRA claims are untimely. The Land Exchange Act was signed into law eleven years ago in 2014. 16 U.S.C. § 539p. RFRA is subject to the four-year statute of

---

[6] That does not mean, however, that an EIS is unreviewable. Instead, the APA provides that "preliminary, *procedural*, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704 (emphasis added). Thus, an EIS typically is reviewable once an agency makes the final decision the NEPA review informed. *See, e.g.*, *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1118 (9th Cir. 2010) ("Once an EIS's analysis has been solidified in a ROD, an agency has taken final agency action, reviewable under § 706(2)(A).").

[7] The DROD, FEIS, and Draft Environmental Impact Statement are available on the Forest Service's website. *See Resolution Copper Project and Land Exch. Docs.*, *U.S. Dep't of Agric.* https://www.resolutionmineeis.us/documents (last visited July 31, 2025).

limitations that Congress established for claims arising under laws passed after 1990. 28 U.S.C. § 1658(a) ("[A] civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."). Thus, the Ninth Circuit has explained that "civil claims, such as [RFRA] claims, 'arising under an Act of Congress enacted after [December 1, 1990],' have a four-year period of limitations." *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012); *see also Burkman v. Bureau of Prisons*, No. 23-506, 2024 WL 4135798, at *5 (D. Conn. Sept. 10, 2024) ("A RFRA claim is subject to the four-year statute of limitations that generally governs causes of actions brought under federal statutes enacted after 1990.").

Plaintiffs' Free Exercise claims are also untimely. Those claims are governed by the six-year statute of limitations in 28 U.S.C. § 2401(a). That catchall statute of limitations applies to claims alleging violations of a plaintiff's First Amendment rights. *See Alden v. AECOM Tech. Corp.*, No. 18-3258, 2019 WL 13065377, at *3 (N.D. Cal. Mar. 12, 2019) ("This statute of limitations has been applied to claims that the government" prevented a plaintiff from "exercising his First Amendment rights."). Here too, Plaintiffs' Free Exercise claims premised on the Land Exchange Act come years too late.[8] In turn, Plaintiffs cannot show a likelihood of success as to either claim.

### B. Plaintiffs' Claims Fail on the Merits.

Plaintiffs' RFRA, Free Exercise, NEPA, and NHPA claims also fail on their substance. The Ninth Circuit has already concluded that Plaintiffs' Free Exercise and RFRA claims fail under controlling Supreme Court precedent, a conclusion was confirmed by the Supreme Court's recent denial of certiorari. As to NEPA, this Court must defer to the Forest Service's judgment as to the scope and contents of the FEIS so long as the agency's choices were reasonable. The FEIS easily clears that hurdle. Finally, Plaintiffs'

---

[8] If Plaintiffs intended to challenge Resolution Copper's prospective (and not yet actualized) decision to mine on land acquired via the land transfer, that private decision is not cognizable under either RFRA or the First Amendment. *See Belagu v. Inslee*, 975 F.3d 940, 947 (9th Cir. 2020) ("permit[ting] the private choice of the parties" is not state action).

NHPA and consultation claims lack merit because the Forest Service engaged in extensive consultation with the consulting parties that satisfied all legal requirements.

### 1. Plaintiffs' RFRA and Free Exercise claims fail under controlling law.

Even if Plaintiffs' RFRA and Free Exercise claims were timely, they fail under controlling law. Plaintiffs argue that the land exchange will burden their religious exercise by preventing them from "visiting, praying, and participating in sacred ceremonies" at Oak Flat, and by preventing them from "engaging in core religious practices that are essential to their children's religious development," Dkt. No. 1 ¶¶ 107, 126, in violation of RFRA and the Free Exercise Clause. *Id.* ¶¶ 101–128.

These claims are essentially the same as those exhaustively litigated in this District and the Ninth Circuit in *Apache Stronghold*. As this Court recognized when considering the Tribe's claims, these claims "are foreclosed by binding Ninth Circuit law, with little reason to believe the Supreme Court will revisit that ruling." *SCAT*, No. 21-cv-68-DWL (D. Ariz.), Dkt. No. 99 at 8. That conclusion is dispositive here. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result."). That certain judges on the Ninth Circuit issued dissents and two Justices dissented from the denial of certiorari does not change that fact; nor does Apache Stronghold's pending petition for rehearing of the cert denial. *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority."); *In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017) (district courts are bound by published Ninth Circuit opinions even before mandate issues).

The Supreme Court's recent decision in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025), also does not change that analysis. In *Mahmoud,* the Court considered whether a public school burdens the religious exercise of parents under the Free Exercise Clause by not allowing them to opt their children out of being read "'LGBTQ-inclusive' storybooks." *Id.*

11

1  at 2341. While Plaintiffs press that the Ninth Circuit's en banc decision in *Apache*
2  *Stronghold* or the Supreme Court's decision in *Lyng v. Northwest Indian Cemetery*
3  *Protective Association*—on which the Ninth Circuit relied—have been displaced by
4  *Mamoud*, the Court expressly stated that *Lyng* "ha[d] no application" to its decision in
5  *Mahmoud*. *Id.* at 2356–57. Plaintiffs are therefore incorrect to argue that *Mahmoud*
6  compels a different result than the one the Ninth Circuit reached in *Apache Stronghold*.

7          **2.  The FEIS complies with NEPA.**

8          NEPA is a "procedural cross-check." *Seven Cnty.*, 145 S. Ct. at 1507. It "does not
9  mandate particular results but simply prescribes the necessary process" by which agencies
10  must consider the environmental impacts of their actions. *Robertson v. Methow Valley*
11  *Citizens Council*, 490 U.S. 332, 350 (1989). As the Supreme Court "doubly underscore[d],"
12  a "rule of reason" applies in NEPA cases to the agency's decisions about the scope and
13  contents of the EIS. *Seven Cnty.*, 145 S. Ct. at 1513. And "agencies are not required to
14  analyze the effects of projects over which they do not exercise regulatory authority." *Id.* at
15  1516. Thus, "the role of a court in reviewing the sufficiency of an agency's consideration
16  of environmental factors is a limited one." *Vt. Yankee Nuclear Power Corp. v. Nat. Res.*
17  *Def. Council*, *Inc.*, 435 U.S. 519, 555 (1978). Plaintiffs' NEPA claims fail when viewed
18  through the lens of these principles of deference.

19          *First*, Plaintiffs are incorrect that the 2023 amendments to NEPA applied to the
20  Forest Service's NEPA review here. As part of the Fiscal Responsibility Act of 2023,
21  Congress enacted the "Building United States Infrastructure through Limited Delays and
22  Efficient Reviews Act of 2023" ("BUILDER Act"), Pub. L. 118–5, Div. C, Tit. III, § 321,
23  137 Stat. 38–39, which imposed time and page limitations on NEPA reviews. 42 U.S.C.
24  §§ 4336a(e)(1)(A),  (g)(1)(A). But the Forest Service's NEPA review here began in March
25  2016 when the Service published Notice of Intent to prepare an EIS in the Federal Register.
26  FEIS Vol. 1 at ES-9. By the time Congress enacted the NEPA amendments in 2023, the
27  Forest Service had already published a draft EIS, held six public meetings and received
28  more than 29,000 comments on that draft EIS, and published (and then withdrawn) an

initial final EIS. FEIS Vol. 1 at ES-10.

Statutes are presumed to apply only prospectively "unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012). Nothing in the BUILDER Act suggests it was intended to apply retroactively to NEPA reviews already underway. Indeed, it would be odd indeed for a statute designed to shorten the time and resources that agencies spend on NEPA reviews to be read to have the effect of sending agencies back to the drawing board to do additional NEPA review.[9]

And even if the BUILDER Act's page limitations applied, Plaintiffs cannot show that they were injured by receiving more information that they were otherwise entitled to. At most, any such injury would be no more than a "procedural injury *in vacuo*," *Summers v. Earth Island Inst.*, 555 U.S. 488, 496-97 (2009), that cannot serve as a basis for a preliminary injunction. *See, e.g.*, *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992) ("[A] procedural violation of NEPA does not compel the issuance of a preliminary injunction.").

*Second*, Plaintiffs are also wrong that the FEIS failed to consider reasonable alternatives. *See* Mot. 28–30. The thrust of Plaintiffs' argument is that the Forest Service should have considered alternative mining methods. *Id.* But, as the FEIS and Draft ROD make clear, the Forest Service does not have authority to regulate mining operations on private land. *See, e.g.*, DROD at 5 ("Mining operations within the area conveyed by the Forest Service in the exchange are not subject to regulation by the Forest Service, since Forest Service regulation of mining operations pertains only to mining operations

---

[9] Guidance from the Council on Environmental Quality ("CEQ") bolsters this conclusion. CEQ advises agencies to consider how "implementation of a provision could lead to inefficiency in an ongoing NEPA review," including considering "the stage at which the environmental review was at the time of the amendment; the expectations of any project proponents; additional resources that would be required to implement the provision; [and] the extent of any disruption it could cause." CEQ, Questions and Ans. on the Fiscal Resp. Act of 2023's Amends. to NEPA and CEQ's Bipartisan Permitting Reform Implementation Rule (Phase 2), "How do the amendments apply to ongoing NEPA reviews?," *available at* https://ceq.doe.gov/laws-regulations/fra.html (last visited July 31, 2025).

conducted on [National Forest Service] land . . . ."). The Supreme Court has been unequivocal: "agencies are not required to analyze the effects of projects over which they do not exercise regulatory authority." *Seven Cnty.*, 145 S. Ct. at 1516. The Forest Service lacks regulatory authority to require Resolution Copper to utilize particular mining techniques, and therefore NEPA did not require analysis of alternative techniques.

Regardless, the Forest Service did assess alternative mining techniques "due to the interest in this topic" expressed via the public's comments. *See* FEIS Vol. 1 at 50. Ultimately, however, the agency dismissed those alternatives from detailed analysis because "[a]lmost all industry mining guidance indicates alternative mining techniques are not appropriate for a deposit like the Resolution Copper deposit, and the trade-offs are unreasonable." *Id.* The Forest Service's decision about the scope of its analysis is entitled to "substantial deference." *Seven Cnty.*, 145 S. Ct. at 1513. In conducting its NEPA review, the Forest Service had to "make a series of fact-dependent, context-specific, and policy-laden choices about the depth and breadth of its inquiry—and also about the length, content, and level of detail of the resulting EIS." *Id.* As the Supreme Court has admonished, courts "should not micromanage those agency decisions." *Id.*[10] Instead, "[s]o long as the EIS addresses environmental effects from the project at issue, courts should defer to the agencies' decisions about where to draw the line." *Id.*

In sum, Plaintiffs cannot succeed on the merits of their NEPA claims.[11]

### 3. Plaintiffs' NHPA Claim Lacks Merit.

Plaintiffs' NHPA claims fare no better. In arguing that the Forest Service failed to

---

[10] Plaintiffs' motion asks this Court to do precisely the opposite. For instance, it seizes on the FEIS's reference to "almost no alternative techniques" to pose rhetorical fly-specking questions like "even if a single method is 'reasonable' or 'well suited,' why is it not being actively considered"? Mot. 29.

[11] If the Court find for Plaintiffs on any issue, it should remand *without* vacatur of the FEIS or an injunction against the transfer of title because "[e]ven if an EIS falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project, at least absent reason to believe that the agency might disapprove the project if it added more to the EIS." *Seven Cnty.*, 145 S. Ct. at 1514.

comply with the NHPA, Plaintiffs repeatedly misstate the law and misrepresent the facts. *See* Mot. 31, 32 (alleging that the Forest Service "exclu[ded]" ACHP from the consultation process and accusing it of "ignoring preservation values."). The Forest Service consulted with the Advisory Council on Historic Preservation ("ACHP"), the Arizona State Historic Preservation Officer, 15 tribes (including the Tribe), representatives of local governments, public utilities, and other federal and state agencies over a period of nearly 8 years. That extensive consultation satisfied the NHPA.

NHPA Section 106 requires federal agencies to "take into account the effect of [an] undertaking on any historic property." 54 U.S.C. § 306108. In particular, the federal agency must afford ACHP "a reasonable opportunity to comment with regard to the undertaking." *Id.* Like NEPA, "[s]ection 106 of NHPA is a 'stop, look, and listen' provision that requires each federal agency to consider the effects of its programs." *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999). Thus, while the Forest Service must "seek" approval from ACHP, it need not receive that approval to comply with Section 106. Nor must it refrain from undertakings that harm historic properties. "The Act does not require a federal agency to engage in any particular preservation activities; rather, Section 106 only requires that the agency consult the State Historic Preservation Office and ACHP and consider the impacts of its undertaking." *CTIA - The Wireless Ass'n v. FCC*, 466 F.3d 105, 107 (D.C. Cir. 2006).

The record demonstrates the Forest Service complied with the NHPA. *See generally* FEIS at 814–37, 998–1000. The agency initiated consultation with ACHP and other NHPA consulting parties in 2017, and then "engaged in a process under Section 106 of the [NHPA] to develop a Programmatic Agreement (PA) to address mitigation of potential adverse effects to cultural resources." Ex. 1, Ltr. of Sec. Rollins (Apr. 17, 2025). By January 2021, all parties to the agreement except ACHP had signed the programmatic agreement. In February 2021, ACHP notified the Forest Service that it was terminating consultation because it "believe[d] that further consultation in this case would be unproductive." FEIS at 815. Central to ACHP's decision to terminate was its conclusion

1   that the land exchange "would destroy significant historic properties, including the highly

2   significant Oak Flat," and that the measures contemplated by the programmatic agreement

3   were "not sufficient to adequately resolve those adverse effects." *SCAT,* No. 21-cv-68-

4   DWL (D. Ariz.), Dkt. No. 82-2 at 1. The Secretary responded to ACHP's February 2021

5   termination letter on April 17, 2025. FEIS at 1000.

6        ACHP's termination of consultation and the Secretary's April 17 Letter response

7   satisfy the NHPA. 36 C.F.R. § 800.7(a) (consulting parties "may determine that further

8   consultation will not be productive and terminate consultation."). Termination of

9   consultation by ACHP triggers an obligation by the agency to "take into account [ACHP's]

10  comments in reaching a final decision on the undertaking[,]" and "document this decision."

11  *Id.* § 800.7(c)(4); *see Concerned Citizens All., Inc. v. Slater*, 176 F.3d 686, 696 (3d Cir.

12  1999) ("While the ACHP's recommendations do not and cannot control agency

13  decisionmaking, the [ ] agency must demonstrate that it has read and considered those

14  recommendations."); *Coal. Against a Raised Expressway, Inc. v. Dole*, 1986 U.S. Dist.

15  LEXIS 30976, at *46–47 (S.D. Ala. Oct. 20, 1986) (agency complied with Section 106 by

16  considering ACHP comments even though it disagreed with them), *aff'd*, 835 F.2d 803

17  (11th Cir.1988). But termination is not evidence of a lack of meaningful consultation. *See*

18  FEIS Vol. 3 at 998–1000 (consultation summary); Vol. 6 at S-1–110 (consultation history).

19       Accordingly, the Section 106 process is complete. *See Concerned Citizens*, 279 F.

20  Supp. 3d at 942 (NHPA guarantees "only that the tribe will have a reasonable opportunity

21  for [ ] consultation.").

22  **II.   The Remaining Factors Do Not Tip Sharply in Plaintiffs' Favor.**

23      **A. Plaintiffs Cannot Meet Their Burden to Establish Irreparable Harm.**

24       Plaintiffs filed their motion nearly *eleven years* after Congress enacted the statute at

25  issue, and *four years* after three other groups of plaintiffs—including the San Carlos

26  Apache Tribe—filed suit in this District. Their delay alone is reason enough to deny their

27  preliminary injunction motion. *See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762

28  F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary

injunction implies a lack of urgency and irreparable harm.").

Plaintiffs also have failed to demonstrate that imminent irreparable harm is likely to result in the absence of an injunction. The mere "possibility" of harm is insufficient. *Winter*, 555 U.S. at 22. This is so even where environmental damage is alleged. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 544–45 (1987).

Here, the title transfer will not cut off access to all the exchanged lands or cause immediate environmental injury. The Land Exchange Act requires:

> [a]s a condition of conveyance of the Federal land, Resolution Copper shall agree to provide access to the surface of the Oak Flat Campground to members of the public, including Indian tribes, to the maximum extent practicable, consistent with health and safety requirements, until such time as the operation of the mine precludes continued public access for safety reasons, as determined by Resolution Copper.

16 U.S.C. § 539p(i)(3). Plaintiffs will continue to enjoy access to the Oak Flat Campground for as long as it is safe. And—as Resolution Copper explained in its previous opposition briefs—any environmental injury from mining on the exchanged land is far from imminent. *See, e.g.*, *AMRC v. United States,* No. 21-cv-122 (D. Ariz.), Dkt. No. 72 at 14–16.

Plaintiffs contend that the title transfer will "authorize Resolution Copper to immediately begin preparatory activities" and claim without any support that those activities "are likely to degrade the Oak Flat environment." Mot. 34. But Plaintiffs do not provide the Court any facts to assess the timeframe on which those activities would occur or the concreteness of any harm. *See id.*

In sum, Plaintiffs have failed to meet their burden to establish that imminent, irreparable harm is likely in the absence of injunctive relief.[12]

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

---

[12] In the interest of brevity, Federal Defendants incorporate their analysis of the equities from briefing in the related cases. In any event, because Plaintiffs have not shown either a likelihood of success or serious questions going to the merits, the Court need not address the equitable factors. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013).

1

2          Submitted August 5, 2025,

3

4                                        ADAM R.F. GUSTAFSON
                                         Acting Assistant Attorney General
5                                        U.S. Department of Justice
                                         Environment & Natural Resources Division
6

7                                        */s/ Gregory M. Cumming*
                                         GREGORY M. CUMMING
8                                        ERIKA NORMAN
                                         ANGELA ELLIS
9                                        Natural Resources Section
                                         150 M St. NE, Third Floor
10                                       Washington, D.C. 20002
                                         (202) 305-0457 (Cumming)
11                                       Erika.Norman@usdoj.gov
                                         Angela.Ellis@usdoj.gov
12                                       Gregory.Cumming@usdoj.gov
13

14                                       *Attorneys for Federal Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28