# EXHIBIT 1



*Secretary Brooke L. Rollins*

Washington, D.C. 20250

April 17, 2025

REID NELSON
*Executive Director*
*Advisory Council on Historic Preservation*
*401 F Street NW, Suite 308*
*Washington, D.C. 20001-26*

Re: *Resolution Copper Mining Project and Land Exchange*
*Tonto National Forest, Pinal County, AZ*
*ACHP Project Number: 012344*

Dear Mr. Nelson:

As the Advisory Council on Historic Preservation (ACHP) currently lacks a Chair or Vice Chair, I am addressing this to you as the Executive Director. This letter responds to the ACHP's March 29, 2021, final comments on the proposed Resolution Copper Project (RCP). As you know, Congress mandated the exchange in the Southeastern Arizona Land Exchange and Conservation Act, 16 U.S.C. 539p (SALECA) as part of the 2015 National Defense Authorization Act. As part of its efforts to "assess the effects of the mining and related activities on the Federal land conveyed to Resolution Copper under this section on the cultural and archeological resources that may be located on the Federal land" as outlined in SALECA (16 U.S.C. 539p (c)(9)(C)), the U.S. Forest Service (USFS) engaged in a process under Section 106 of the National Historic Preservation Act (NHPA) to develop a Programmatic Agreement (PA) to address mitigation of potential adverse effects to cultural resources. I appreciate the ACHP's substantial involvement throughout this complex consultation, your leadership in developing the PA, and your guidance to all parties throughout the process.

The Tonto National Forest (TNF) consulted on the development of the PA with the Arizona State Historic Preservation Officer (SHPO), 15 Tribes, representatives of local governments, public utilities, other federal and state agencies, the ACHP, and other interested individuals and organizations, which are reflected in the consultation documents in the project record. All consulting parties agreed on the adverse direct effects on historic properties expected to result from mining after the land exchange takes place. All signatories signed the PA developed to mitigate those effects, except for your organization. Although the ACHP participated in the negotiation and development of the PA, the ACHP later determined that further consultation would be unproductive and therefore, terminated consultation pursuant to 36 C.F.R. § 800.7(a)(4) on February 11, 2021 (Letter. Fowler to Torres, ACHP Project # 012344). The ACHP reaffirmed that termination with final comments in a letter dated March 29, 2021 (Letter. Gonzales to Vilsack).

In accordance with NHPA and its implementing regulations at 36 C.F.R. § 800.7(c)(4), I have thoughtfully considered each of your comments, as well as the concerns expressed by Tribes, consulting parties, and the public. I understand and appreciate your findings and recommendations and have taken them into account in reaching my final decision to publish the FEIS and draft Record of Decision. This letter and the attached summary of my rationale serve as documentation of the United States Department of Agriculture's decision as required by 36 C.F.R. § 800.7(c) in response to your letter dated March 29, 2021. This concludes the NHPA Section 106 process. A copy of this response will be provided to all consulting parties and will be made available to the public.

Sincerely,

Brooke L. Rollins
Secretary
U.S. Department of Agriculture

2

**Attachment 1: Response to Advisory Council on Historic Preservation (ACHP) Recommendations, Letter dated March 29, 2021**

1) *The United States Department of Agriculture (USDA) should work with the Administration and Congress to take immediate steps to amend or repeal the legislation directing the transfer or otherwise prevent it from happening as proposed.*

   Per the Anti-Lobbying Act (18 USC 1913) and subsequent guidance issued by the Department of Justice (13 Op. OLC 300 (1989) and OLC, Guidelines on 18 U.S.C. 1913, at 2 (Apr. 14, 1995)), neither the USDA nor any other agency can advocate for legislative action.

2) *USDA should use further discussions with Tribes and other stakeholders to develop and evaluate alternatives and further modifications to the undertaking that might avoid adverse effects while also pursuing additional steps to modify or prevent the land transfer.*

   As noted above and documented in the unexecuted Programmatic Agreement (PA) and other documents in the project record, USDA worked extensively with Tribes and other stakeholders to identify potential modifications and mitigation that might avoid adverse effects.

   Several alternatives were considered. The Skunk Camp alternative was developed as a direct result of Tribal consultation to address concerns raised by Tribes about adverse effects to resources of concern that would be caused by other alternatives. None of the alternatives allow for adverse effects to be avoided completely, particularly the adverse effects resulting from the statutorily mandated exchange of the Oak Flat parcel out of federal ownership (as required by the Southeastern Arizona Land Exchange and Conservation Act (SALECA)). While the Forest Service has continued to consult with Tribal partners under the authority of the SALECA, it appears, as you noted in your letter, that further consultation in this case is unlikely to result in the development of viable modifications or mitigations that have not already been considered, and that further consultation would likely be unproductive. Nevertheless, in 2021, the Secretary of Agriculture ordered the re-initiation of consultation with Tribal nations after the Final Environmental Impact Statement (FEIS) was rescinded to redouble the agency's efforts to develop strategies to minimize adverse effects within the allowable constraints of the SALECA. To date, additional consultation with the Tribes has not uncovered other potential mitigation or alternatives that would allow USDA to comply with the SALECA while avoiding adverse impacts to Tribal interests. Tribes did express some concerns with the analysis in the FEIS, and the Forest Service has provided additional analysis and explanation in light of these concerns.

   With regard to preventing the land exchange, USDA cannot prevent the land exchange. The land exchange was mandated by Congress in the SALECA, and any modification or repeal of that statute would require a further act of Congress. As you noted in your final comments: "[t]he constraints placed on the consultative process due to the legislated nature of a

1

substantial portion of the undertaking juxtaposed with the magnitude of the adverse effects to historic properties severely restricted the Tonto National Forest's (TNF) ability to consider alternatives to avoid or minimize those effects[.]" The language of the SALECA does not provide any latitude for the USDA to "prevent" the land exchange.

It is also important to recognize that the SALECA limits the authority the USDA will have over most elements of the proposed Resolution Copper Mine (RCM) because once the land is exchanged, the project will be almost entirely on private land.

3) *If USDA chooses to proceed with the undertaking as described, the Forest Service should commit to carrying out mitigation measures in the proposed PA, in consultation with the consulting parties.*

The TNF including partners, consulting Tribes, the State Historic Preservation Office (SHPO), ACHP, and others, invested considerable time and effort to identify mitigation measures that might possibly address potential adverse effects to historic properties. The unexecuted PA memorialized the results of those efforts. USDA remains committed to carrying out the mitigation measures outlined in the now-terminated PA and to working with RCM to ensure they also remain committed to the mitigation measures agreed upon.

With the termination of the PA, RCM has been developing an instrument that will ensure the Tribal programs originally identified in the PA may still be funded by the company. Several consulting parties maintain that the proposed Tribal programs will not adequately resolve adverse effects to Oak Flat and that Tribes remain opposed to the mine. However, USDA is legally bound by the SALECA, which directs the TNF and RCM to seek to find mutually agreeable measures to help mitigate impacts (SALECA Sec. 539p(c)(3)). The TNF is working with RCM to develop an agreement that would, among other things, direct completion of data recovery at historic properties within the federal parcel. However, the TNF does not have authority to enter agreements to implement mitigation on State, private, and Tribal lands.

4) *The Forest Service should evaluate how the Regional and Washington Offices can provide more timely guidance and support for controversial or challenging Section 106 consultations.*

USDA remains committed to ensuring compliance with our consultation obligations under the National Historic Preservation Act (NHPA) and recognizes the importance of cultural and historic lands and resources for Tribes. That is why the Secretary of Agriculture directed the Forest Service to rescind the FEIS for the land exchange and to engage in additional consultation with affected Tribes. The Forest Service ensures coordination with decision makers at all levels necessary within the organization, especially on controversial or challenging projects.

In general, for projects that are complex or controversial, the Regional and Washington Offices are involved to provide subject matter expertise, to address projects that may present

challenges, and to support forests in their assessments and decisions. We will continue to ensure that we are meeting our goals to involve appropriate levels of expertise in the Regional and Washington Offices early in the process.

5) *The Forest Service should work to identify and implement opportunities to better coordinate environmental and historic preservation reviews for large-scale projects.*

Coordination of environmental and historic preservation reviews can be an especially useful strategy, as it offers both a faster, more efficient timeline and provides more complete and effective analyses. The Forest Service continually strives to improve the coordination and integration of these reviews for projects of all sizes, including looking for opportunities to improve the internal policies that provide the framework for ultimate success. The ACHP has provided valuable guidance on this very topic, including *NEPA and NHPA: Handbook for Integrating NEPA and Section 106*. The Forest Service appropriately utilizes the guidance that the ACHP (and other consulting parties, including SHPO) provides on efficiently and effectively fulfilling our obligations.

Specific to the Resolution Copper Project (RCP), throughout the NHPA consultation process, the TNF coordinated extensively with the consulting parties regarding NHPA and National Environmental Policy Act (NEPA) timelines, communicating project updates as soon as new information and analysis became available. These extensive efforts are well documented in the project record. The TNF conducted well over 100 meetings with consulting parties and Tribal nations, hosted field visits, and provided adequate time for the parties and Tribes to communicate their unique concerns and discuss proposed mitigation options. The TNF has undertaken enormous efforts to provide extensive opportunities for parties to engage on this project.

We have endeavored to complete all consultations, including NHPA Section 106 consultation, before issuing a Notice of Availability for the FEIS. All parties, which were signatories to the PA, signed that document prior to the issuance of the notice for the FEIS, except the ACHP, who guided the negotiation and composition of the PA throughout the project before deciding to terminate. The TNF anticipated ACHP would sign the PA and therefore moved forward with publication of the notice for the FEIS without the PA fully executed because the effects of the mining and related activities on the Federal land were fully disclosed in the FEIS and not in dispute. The ACHP was very closely involved and supportive of the PA until the Section 106 consultation was unexpectedly terminated. However, in response to these events, the Secretary of Agriculture instructed the Forest Service to re-initiate consultation with Tribes after the FEIS was rescinded to make another effort to address Tribal concerns.

6) *The Forest Service should pursue initiatives to strengthen early coordination with Tribes in this Region regarding proposed mining activities.*

As part of a larger effort to proactively involve federally recognized Tribes and Alaska Native Corporations in Forest Service programs, project design, and implementation and to closely align Forest Service priorities with Tribal priorities, the Forest Service Office of Tribal Relations (FS-OTR) reviewed its national policies to determine where the Forest Service can strengthen Tribal outreach and coordination efforts. In February 2023, the Forest Service issued *Strengthening Tribal Consultations and Nation-to-Nation Relationships: A USDA Forest Service Action Plan* towards that end.

Regarding the RCP specifically, the Forest Service initiated Tribal consultation in 2002 when RCM first proposed the project. At that time, the TNF initiated an Environmental Assessment (EA) a full 12 years before the passage of the SALECA and now over 20 years ago. In 2017, the San Carlos Apache Tribe sued the Forest Service claiming that project consultation was inadequate and flawed. In 2017, the District Court of Arizona found in favor of the TNF based upon the record of consultation which has grown significantly since that initial litigation.

The agency's goal with the PA for this project was to provide a thorough process for identifying historic properties, cultural resources, and a process for addressing effects. The PA included provisions for future identification of and development of treatments for historic properties. USDA remains committed to implementing these processes and the mitigation measures as the RCP moves forward.

The Forest Service will continue to look for opportunities to improve processes for government-to-government consultation with federally recognized Tribal nations.

USDA appreciates ACHP's engagement and thoughtful recommendations. The NHPA is important to help federal agencies identify and address impacts of management of public lands. Addressing impacts to those lands is of the utmost importance to the USDA. The USDA and the Forest Service are committed to fulfilling our legal responsibilities under the SALECA.