NELSON MULLINS RILEY & SCARBOROUGH LLP
Miles E. Coleman (admitted *pro hac vice*)
S.C. Bar #78264
miles.coleman@nelsonmullins.com
2 W. Washington Street, Suite 400
Greenville, SC 29601
Telephone: (864) 373-2352
Facsimile: (864) 373-2925

Jeffrey A. Wald (admitted *pro hac vice*)
jeffrey.wald@nelsonmullins.com
380 Knollwood Street, Suite 530
Winston-Salem, NC 27103
Telephone: (336) 774-3335
Facsimile: (336) 774-3299

Madeline C. Bergstrom (application for admission *pro hac vice* forthcoming)
madeline.bergstrom@nelsonmullins.com
101 Constitution Ave. NW, Suite 900
Washington, DC 20001
Telephone: (202) 689-2807
Facsimile: (202) 689-2860

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# PHOENIX DIVISION

| | |
|---|---|
| GOUYEN BROWN LOPEZ, *et al.*,<br><br>         Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>         Defendants,<br>and<br><br>RESOLUTION COPPER MINING, LLC,<br><br>         Defendant-Intervenor. | No. 2:25-cv-02758-DWL<br><br>**Emergency Motion for Injunction Pending Appeal**<br><br>**Accompanied by Notice of Expedited Consideration**<br><br>**Relief Requested by today, August 15, or contemporaneously with the Court's preliminary-injunction order** |

Plaintiffs' motion for a preliminary injunction seeking relief to prevent irreparable harm caused by the transfer of Oak Flat to Resolution Copper on Tuesday, August 19, remains pending in this Court. Plaintiffs continue to request that the Court grant the preliminary injunction, but given the urgency of the situation, Plaintiffs respectfully request that, should the Court deny that motion, the Court should, on an expedited basis, enter an injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1). As the Court is aware, an order on this request is ordinarily required for Plaintiffs to seek an injunction pending appeal at the Ninth Circuit, which Plaintiffs intend to do immediately, if necessary. In the event Plaintiffs' motion for preliminary injunction is denied, Plaintiffs therefore respectfully request a ruling on this motion as soon as possible.

Plaintiffs respectfully request that the Court enjoin Defendants from taking any action based on the FEIS including carrying out the exchange of land described in section 3003 of the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Public Law 113-291, including taking any action to convey to Resolution Copper or any other private entity any right, title, or interest in the land described in section 3003 of the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Public Law 113-291, until Plaintiffs' interlocutory appeal has been fully resolved.

In the alternative, Plaintiffs request that this Court enter a limited, 14-day stay of the exchange of land described in Section 3003 of Public Law 113-291, prohibiting any conveyance before August 29, 2025, to give the Ninth Circuit an opportunity to address Plaintiffs' request for an emergency injunction on a less time-compressed schedule. *See W. Land Exch. Project v. Dombeck*, 47 F. Supp. 2d 1216, 1218-19 (D. Or. 1999) (denying injunction pending appeal but ordering 60-day delay in land exchange to permit groups to move appellate court for an injunction pending appeal). Because the parties have already briefed the motion for a preliminary injunction and the same standard applies to an injunction

pending appeal, Plaintiffs request that the Court rule expeditiously on this motion without further briefing from the parties. *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 374 (9th Cir. 2016). Plaintiffs also incorporate by reference their legal arguments, reasoning, and exhibits from prior submissions in support of their request for preliminary relief.

Dated: August 15, 2025                    Respectfully submitted,

/s/ Miles Coleman
Miles Coleman, *pro hac vice*
S.C. Bar #78264
Nelson Mullins LLP
2 W Washington St., Ste. 400
Greenville, SC 29601
(864) 373-2352
miles.coleman@nelsonmullins.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

For centuries, Western Apaches have centered their worship on a sacred site in Arizona called *Chi'chil Biłdagoteel*, or Oak Flat. Oak Flat is the Apaches' direct corridor to the Creator and the site of sacred ceremonies that cannot take place elsewhere.

Yet on Tuesday, the government is planning to transfer Oak Flat to Defendant-Intervenor Resolution Copper for a mine that will admittedly obliterate the site, swallowing it in a massive crater and ending sacred Apache rituals forever. "It is undisputed that this subsidence will destroy the Apaches' historical place of worship, preventing them from ever again engaging in religious exercise at their sacred site." *Apache Stronghold v. United States*, 101 F.4th 1036, 1129 (Murguia, C.J., dissenting).

To preserve the status quo and to protect the appellate courts' ability to consider the petition, Plaintiffs asked the government if it would agree to refrain from transferring Oak Flat until after the Ninth Circuit has had a chance to consider a motion for injunction pending appeal. But the government refused. Accordingly, Plaintiffs now seek a narrow, temporary injunction that would preserve the status quo while the Ninth Circuit considers the injunction. *See* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8(a)(1)(C); *see also Newton v. Consol. Gas Co. of N.Y.*, 258 U.S. 165, 177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court.").

Plaintiffs satisfy all four requirements for injunctive relief. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008). First, they are likely to succeed—and have at the very least shown "serious questions on the merits," *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (en banc). Second, Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief—namely, loss of access to Oak Flat, complete physical destruction of their sacred site, preventing their ability to raise their children in a way consistent with their religious beliefs, and permanent eradication of centuries-old artifacts and religious practices. Third, the balance of equities sharply favors

Plaintiffs, who face an imminent, devastating, and irretrievable loss of rights, and not the government, whose own decades-long delays indicate there is no urgency to this transaction. Finally, the public interest favors an injunction protecting fundamental rights and preventing precipitous federal action that could thwart orderly judicial review.

## FACTUAL BACKGROUND

Western Apaches have worshipped at Oak Flat for centuries. ECF No. 15-7 at 15, (NPS). Oak Flat is a direct corridor to their Creator and the site of essential religious practices that cannot take place elsewhere. *Tisa Wenger, Fighting for Oak Flat: Western Apaches and American Religious Freedom*, 39 J.L. & Religion 247, 248, 264 (2024) (Wenger); NPS at 25. Oak Flat is included in the National Register of Historic Places and has been protected from mining for 70 years. 20 Fed. Reg. 7,319, 7,336–37 (Oct. 1, 1955); NPS at 8.

In 1995, copper was discovered beneath Oak Flat. 1-EIS-ES-1. From 2005 to 2013, congressional supporters of Resolution introduced at least twelve standalone bills to transfer Oak Flat to Resolution. Katherine E. Lovett, *Not All Land Exchanges Are Created Equal: A Case Study of the Oak Flat Land Exchange*, 28 Colo. Nat. Res., Energy & Envtl. L. Rev. 353, 366–67 (2017). Each failed. *Id.* In 2014, the land-transfer bill was introduced as a last-minute rider to the must-pass National Defense Authorization Act, which authorizes funding for the U.S. military. *Id.* at 14. The bill revokes the presidential orders protecting Oak Flat from mining and authorizes the transfer of Oak Flat to Resolution Copper for a copper mine. Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, § 3003(b)(2), (b)(4), (c)(1), (d), 128 Stat. 3292, 3293.

The government admits the mine will destroy Oak Flat, causing it to "subside" into a massive crater nearly two miles wide and 1,100 feet deep. *See, e.g.*, *Apache Stronghold*, 101 F.4th at 1047–48 (Collins, J.). The mine will completely destroy the old-growth oak groves, sacred springs, burial grounds, religious and cultural artifacts, and irreplaceable sites used for sacred rituals. 1-EIS-ES-29, 1-EIS-44, 1-EIS-160; 6-EIS-U-3, 6-EIS-U-9–

10. The government admits these effects will be "immediate, permanent, and large in scale." 3-EIS-892; 1-EIS-327. As a result, "[r]eligious worship will be impossible," and the Apaches will never again be able to worship at Oak Flat. *Apache Stronghold*, 101 F.4th at 1145 (Murguia, C.J., dissenting).

## PROCEDURAL HISTORY

Plaintiffs filed this suit in the District of D.C. soon after the government republished the EIS and sought a preliminary injunction. *Lopez v. United States*, No. 25-cv-02408 (complaint filed July 24, 2025, D.D.C.). The D.C. district court, at Resolution's and the government's behest, transferred this case to the District of Arizona, and Plaintiffs' motion for preliminary injunction remains pending.

## LEGAL STANDARD

An injunction pending appeal is warranted when the moving party demonstrates that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These factors are evaluated "on a sliding scale, such 'that a stronger showing of one element may offset a weaker showing of another.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (en banc) (citations and internal quotation marks omitted). Where "the balance of equities 'tips sharply in the plaintiff's favor, the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id.* Serious questions need only indicate "a fair chance of success on the merits," they "need not promise a certainty of success, nor even present a probability of success." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024).

This is the same as the standard for a preliminary injunction. *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 374 (9th Cir. 2016). But given the importance of preserving the status quo when the plaintiffs have raised serious legal questions on the merits, the

court may deny a preliminary injunction but enter an injunction pending appeal. *See Am. Beverage Ass'n v. City & Cnty. of San Francisco*, No. 15-CV-03415-EMC, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016) ("Thus, an injunction pending appeal may be appropriate, even if the Court believed its analysis in denying preliminary injunctive relief is correct. This is such a case."); *MediNatura, Inc. v. Food & Drug Admin.*, No. CV 20-2066 (RDM), 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021) ("An injunction pending appeal may be especially appropriate where, in the absence of such an injunction, the subject matter of the dispute will be destroyed or otherwise altered in a way that moots the pending appeal."). Such relief is "especially appropriate" where, as here, the "subject matter of the dispute will be destroyed or otherwise altered" in a way that undermines a "pending appeal." *MediNatura, Inc. v. FDA*, No. 20-cv-2066, 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021).

Alternatively, this Court can act to preserve the viability of the appeal by entering a limited injunction to preserve an appellate court's jurisdiction and allow time for orderly appellate review. *See, e.g.*, *Apache Stronghold v. United States*, No. CV-21-00050-PHX-SPL, 2025 WL 1360694, at *9 (D. Ariz. May 9, 2025) (granting a "narrow, temporary injunction" pending resolution of petition for certiorari); *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, No. 3:20-cv-290, 2021 WL 454280, at *4 (D. Alaska Feb. 6, 2021) (granting "brief and limited injunction" to avoid "irreparable environmental consequences"; collecting cases); *Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126, 1134 (E.D. Cal. 2011) (granting injunction pending appeal prohibiting "timber harvesting activities" in certain areas of "particularly sensitive habitat in which logging operations had not yet commenced"); *Native Ecosystems Council v. Kimbell*, No. 05-110, 2005 WL 8167434, at *6-7 (D. Mont. Nov. 21, 2005) (granting injunction pending appeal after denying preliminary injunction; "[h]olding the Project" during appeal "is a prudent measure to preserve Plaintiffs' right to challenge the Project's effects on the environment") *W. Land Exch. Project v. Dombeck*, 47 F. Supp. 2d 1216, 1218 (D. Or. 1999) (denying

injunction pending appeal but enjoining land transfer for 60 days to allow plaintiffs to move for an injunction pending appeal in the Ninth Circuit "given the nature of the environmental consequences" of the land exchange).

**ARGUMENT**

***Serious questions on the merits.*** When the "balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits." *FCA*, 82 F.4th at 684. Given Plaintiffs are likely to succeed on the merits of their claims under—at minimum—*Mahmoud*, NEPA, and NHPA, they easily satisfy this "lesser" serious-questions standard. *Id.*

*First*, the land transfer triggers strict scrutiny under the Free Exercise Clause as interpreted by *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025). *Mahmoud* holds that a burden on parents' free-exercise rights exists when government actions present an "objective danger" to their ability "to raise their children in a way that is consistent with their religious beliefs and practices." 145 S. Ct. at 2351. And where such a Free Exercise burden is present, courts "need not ask whether the law at issue is neutral or generally applicable before proceeding to strict scrutiny." *Id.* at 2361.

Here, the government's actions here will *eliminate* the parent Plaintiffs' ability to provide their children with the unique spiritual connection and religious practices that are available only at Oak Flat. *See, e.g.*, Dkt.15-3 ¶ 15; Dkt.15-5 ¶¶ 16, 19–20. Their daughters will not be able to hold religious ceremonies signifying their transition to Apache women. They will forever lose the special connection to the White Painted Woman, who the Apache religion teaches came from the ground at Oak Flat. Dkt.15-2 ¶¶ 20–21, 23; Dkt.15-3 ¶ 20; *see also* Dkt.15-5 ¶ 13. They will lose access to the Ga'an that reside there and the special connection to the creator, Usen, that exists only there. *See* Dkt.15-2 ¶ 28; Dkt.15-5 ¶ 7; Dkt.15-3 ¶¶ 19–20. For Gouyen and V.K., coming of age at Oak Flat is when their Apache faith came alive. Dkt.15-5 ¶ 14; *see also* Dkt.15-2 ¶ 21 ("When I opened my eyes after I was painted, I saw the world differently. My ceremony was a transformational moment in

8

my life."). But Angela and Sinetta fear that their younger daughters will not have that opportunity. Without that experience, they will be unable to pass their faith and religious practices on to their children. This undoubtedly poses "a very real threat of undermining the religious beliefs and practices the parent wishes to instill in the child." *Mahmoud*, 145 S. Ct. at 2356 (internal quotation marks removed).

Neither the government nor Resolution disputes the key point under *Mahmoud*—that the destruction of Oak Flat will burden Plaintiffs' ability to instill their religious beliefs and practices in their children. *See generally* Dkt.33 at 11–12; Dkt.38 at 9–11. Nor has the government tried to meet its burden under strict scrutiny. *Mahmoud* thus raises a serious question on the merits.

*Second*, the land-transfer statute requires the Forest Service to comply with NEPA. § 3003(c)(9)(A)–(B), 128 Stat. 3735. Yet the EIS violates NEPA in at least two ways: (1) by issuing an EIS that far exceeds NEPA's page limit, and (2) by failing to consider alternative mining methods that would advance Congress's purpose for the land-transfer statute.

As neither the government nor Resolution disputes, the 2,400-page EIS far exceeds NEPA's page limit: 150 pages generally or 300 pages in "extraordinary" circumstances. 42 U.S.C. § 4336a(e)(1)(A)-(B); *see, e.g.*, Dkt.12 at 14–15 (EIS "comprise[s] thousands of pages in total"). And as Plaintiffs have explained, Defendants' attempts to excuse the Forest Service's blatant violation fail. *See* Dkt. 40 at 11-13. Specifically, the presumption of retroactivity does not excuse the Forest Service from compliance with NEPA's express regulation of "environmental impact statements" (as opposed to "NEPA reviews") two years after NEPA was amended. *Cf. Seven Cnty. Infrastructure Coal. v. Eagle County*, 145 S. Ct. 1497, 1512 n.3 (2025) (explaining that Congress "prohibits an agency's EIS from going on endlessly," but not holding the government to the requirement because NEPA was amended "two years after the Board *issued* its final EIS"—not after it merely started *preparing to* issue one (emphasis added)). And further reinforcing the weakness of their

1  justifications, the government does not disclaim knowledge of or ability to follow the page-
2  limit law when issuing the EIS in 2025.

3  The EIS is not only overlength, but also underdeveloped. *See* Dkt. 15-1 at 28-30; Dkt.
4  40 at 13-14. Under NEPA, the Forest Service is required to "study, develop, and describe
5  [in the EIS]" the "technically and economically feasible" alternatives to turning Oak Flat.
6  42 U.S.C. § 4332(F); *see also id.* § 4332(c)(iii) (similar). And the Ninth Circuit interprets
7  this provision to require consideration of all "reasonable" alternatives, defined to include
8  all alternatives that advance the purpose of a government project. *W. Watersheds Project*
9  *v. Abbey*, 719 F.3d 1035, 1046 (9th Cir. 2013). Although Dr. Chambers's report explained
10 that backfill-compatible mining methods would advance Congress's purpose of mining
11 copper, *see* Dkt. 40-9 at 1, 7-8; 16 U.S.C. § 539p(a), (c)(8), the Forest Service dismissed
12 these reasonable alternatives with boilerplate language, *see* 4-EIS-F-5 ("eliminat[ing]" "al-
13 ternative mining techniques" "from detailed analysis"). This failure to complete a reason-
14 able-alternatives analysis—"the 'heart' of the EIS," *Ctr. for Biological Diversity v. U.S.*
15 *Bureau of Land Mgmt.*, 141 F.4th 976, 990 (9th Cir. 2025)—is a clear violation of NEPA
16 and independently requires vacatur.

17 *Third*, the government has violated the NHPA. Because the land transfer will adversely
18 impact "historic property," the NHPA requires the government to consult with the Advi-
19 sory Council on Historic Preservation (ACHP), *Friends of the Atglen-Susquehanna Trail,*
20 *Inc. v. Surface Transp. Bd.*, 252 F.3d 246, 253 (3d Cir. 2001), and "avoid or mitigate any
21 adverse effect," *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir.
22 1999). *See* 54 U.S.C. § 306108; 36 C.F.R. § 800.1(a). If an agreement between the ACHP
23 and the agencies responsible for the government action could not be reached as to a plan
24 for mitigation, the Forest Service was required to "must make clear in the record that the
25 ACHP's comments were taken seriously." *Friends of the Atglen-Susquehanna Trail*, 252
26 F.3d at 265. The Forest Service did neither.
27

Ignoring the ACHP's identification of 43 sites eligible for the National Register that would be transferred to Resolution Copper and "permanently damaged by proposed mining operations," ACHP Comments at 3—including the Chi'chil Biłdagoteel Historic District, *id.* at 5—the USDA Secretary responded to the ACHP in a letter that declined to adopt the ACHP's recommended measures without substantive explanation. Response Letter from Brooke L. Rollins, USDA Sec'y, to Reid Nelson, ACHP Exec. Dir. (Apr. 17, 2025), https://www.achp.gov/sites/default/files/2025-04/ResolutionCopperLetter417.pdf. The Forest Service then confirmed that it did not conduct the suggested reassessment by issuing a new EIS that merely repeats its alternatives analysis from 2020, before the ACHP issued its 2021 comments. 4-EIS-F-3–F-4. Until the government "seriously" considers the ACHP's suggestions of alternative mining techniques by conducting a complete study of non-caving mining methods, the government's actions are in violation of the NHPA. Thus, the promulgation of the EIS and the transfer of the land—should be held unlawful and "set aside." *Friends of the Atglen-Susquehanna Trail*, 252 F.3d at 265; 5 U.S.C. § 706(2).

All of this indicates that Plaintiffs have a strong likelihood of success on the merits. At the very least, they have shown "'serious questions' on the merits"—which is all that is required here. *FCA*, 82 F.4th at 684.

**Irreparable Harm.** Plaintiffs also face a grave risk of irreparable harm. "Irreparable harm is relatively easy to establish in a First Amendment case." *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019). This is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *FCA*, 82 F.4th at 694. Here, it is undisputed that the land exchange will result in the permanent, physical destruction of Oak Flat. As a result, "[r]eligious worship will be impossible." *Apache Stronghold*, 101 F.4th at 1145 (Murguia, C.J., dissenting). That harm is indisputably irreparable.

Nor is the harm limited to the ultimate completion of the mine and final destruction of Oak Flat. The government has admitted that "the min[ing activity planned by Resolution

11

Copper] would cause '*immediate*, permanent, and large … scale' destruction of 'archaeological sites, tribal sacred sites, [and] cultural landscapes.'" *Id.* at 1131 (emphasis added) (quoting USDA, U.S. Forest Service, *Resolution Copper Project and Land Exchange Environmental Impact Statement*, 2-FEIS-789 (Jan. 15, 2021), https://perma.cc/N7MF-6EPL). But "even if the site won't be entirely cratered immediately after conveyance," "[o]nce the land is transferred, the Western Apaches will suffer immediate, irreparable harm." *Apache Stronghold*, 2021 WL 12295173, at *5 (Bumatay, J., dissenting). That destruction will "undoubtedly" begin with "preparatory activities"—like "constructing 'new shafts,' 'new roads,' a 'water treatment plant,' an 'admin building,' and 'substations'"—that themselves "are likely to degrade the Oak Flat environment" and "cause irreparable damage." *Id.* (quoting 1-FEIS-57, Fig. 2.2.2-3).

Even setting physical destruction aside, the transfer immediately makes Oak Flat "private property" that is "no longer … subject to [federal law] or Forest Service management that provides for tribal access." 3-FEIS-824. That gives Resolution power to exclude Plaintiffs from Oak Flat and to restrict the timing and location of Sunrise Ceremonies that are already planned—like L.B.'s Sunrise Ceremony, which is currently planned for October. Dkt.15-3 ¶ 19. And such restrictions will be harder or impossible to challenge, since at that point "Oak Flat will be private property no longer subject to RFRA and other federal protections." *Apache Stronghold*, 95 F.4th at 717 (Murguia, C.J., dissenting); *see also Apache Stronghold*, 2021 WL 12295173, at *6 (Bumatay, J., dissenting) ("[O]nce the land leaves the Government's hands, the Western Apaches likely cannot bring a RFRA or Free Exercise claim against Resolution Copper should the venture burden or extinguish their ability to worship or access Oak Flat.").

Lastly, once the transfer is completed and mining prep work begins, this Court may lose equitable authority to rescind the transfer later. That is precisely what happened in *Kettle Range Conservation Group v. United States Bureau of Land Management*, 150 F.3d 1083, 1085, 1087 (9th Cir. 1998) (per curiam), where the Ninth Circuit held that the district

court "was without authority to rescind" a land transfer "after the new owners have taken certain irreversible actions," such as "clearcutting the trees." As a concurring judge warned: "[J]udges must be particularly sensitive to the practical consequences of their initial action or inaction [on requests for injunctive relief *pendente lite*] … to ensure that the court does not inadvertently lose its ability to enforce an important Congressional mandate." *Id.* at 1087–88 (Reinhardt, J., concurring). That is a serious risk here.

### *Balance of Hardships and Public Interest.*

The balance of hardships and public interest also decisively favor relief. Weighing the extreme and irreparable harm that will occur in the absence of an injunction against a slight delay, short in comparison to the government's own long process, the scale tips decisively in Plaintiffs' favor.

When the Government is the defendant, the equities and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And when a party "'raise[s] serious First Amendment questions,' that alone 'compels a finding that the balance of hardships tips sharply in [its] favor.'" *X Corp. v. Bonta*, 116 F.4th 888, 904 (9th Cir. 2024) (alterations in original) (quoting *FCA*, 82 F.4th at 695). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *FCA*, 82 F.4th at 695. Further, it is not "equitable or in the public's interest" to permit the government "to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Congress clearly set requirements on the land transfer. Ensuring the government abides by those requirements is in the public interest. "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021).

Here the equities tip sharply in favor of Plaintiffs. If preliminary relief is not granted, it "could result in the permanent loss of Apaches' legal rights to access their ancestral sacred site." *Apache Stronghold*, 2025 WL 1360694, at *8. Meanwhile, delaying the transfer of

13

Oak Flat causes no harm to the Government and furthers the public interest. The Government faces no urgency with the transfer, and, in fact, the transfer was proposed almost two decades ago and authorized by statute eleven years ago. *See* Gorsuch & Thomas, 145 S. Ct. at 1482–83. Further, in 2021, the Government unilaterally rescinded the original EIS, *Resolution Copper Project & Land Exchange Environmental Impact Statement: Project Update*, U.S. Department of Agriculture (Mar. 1, 2021), https://archive.ph/N65gZ, and its delay in republishing the EIS until 2025 underscores that preliminary relief delaying the transfer causes no harm to the government. All the copper the government seeks to have mined will still be there by the time this case is litigated.

As Judge Logan noted in *Apache Stronghold*, weighing these factors in light of the "'error costs on each side' depending on how this injunction and appeal play out," the "the balance of equities indeed 'tip[] sharply'" in Plaintiff[s'] favor." *Apache Stronghold v. United States*, No. CV-21-00050-PHX-SPL, 2025 WL 1360694, at *8 (D. Ariz. May 9, 2025). "In the most harmful scenario to Plaintiff[s], if this Court denies the injunction . . . and Plaintiff[s] ultimately win[ ] on the merits, Plaintiff[s] will have already suffered some or all of its enumerated immediate harms, even despite winning the day in this litigation. Yet in the riskiest scenario for Defendants, where the injunction is granted, . . . and [the court of appeals] ultimately affirms Defendants on the merits, the only harm will have been a delay of the land transfer for a number of months or (at most) a couple years." *Id.*

Indeed, this is precisely the kind of case in which the Ninth Circuit has found that the balance of the hardships tips sharply in favor of an injunction. *See, e.g.*, *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011) (balance of the hardships tipped sharply in favor of environmental organization opposing logging because "[o]nce those acres are logged, the work and recreational opportunities that would otherwise be available on that land are irreparably lost" and where government's lost revenue was no significant.); *see also Kettle Range Conservation Grp.*, 150 F.3d at 1087–88 (Reinhardt, J., concurring) (noting the need for injunctive relief "to ensure that the court does not inadvertently lose

its ability to enforce an important Congressional mandate" in cases involving the transfer and alteration of land). Thus, the balance of the hardships and tips sharply in favor of Plaintiffs.

## CONCLUSION

This case involves a matter of existential importance to Western Apaches. Before Oak Flat is transferred to Resolution Copper, a brief injunction to maintain the status quo is warranted to avoid irreversible harm and to ensure orderly judicial review.

Dated: August 15, 2024

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ Miles E. Coleman
Miles E. Coleman (admitted *pro hac vice*)
miles.coleman@nelsonmullins.com
2 W. Washington Street, Suite 400
Greenville, SC 29601
Telephone: (864) 373-2352
Facsimile: (864) 373-2925

Jeffrey A. Wald (admitted *pro hac vice*)
jeffrey.wald@nelsonmullins.com
380 Knollwood Street, Suite 530
Winston-Salem, NC 27103
Telephone: (336) 774-3335
Facsimile: (336) 774-3299

Madeline C. Bergstrom
(application for admission *pro hac vice* forthcoming)
madeline.bergstrom@nelsonmullins.com
101 Constitution Ave. NW, Suite 900
Washington, DC 20001
Telephone: (202) 689-2807
Facsimile: (202) 689-2860

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 15, 2025, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

/s/ Miles E. Coleman