**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Gouyen Brown Lopez, et al.,<br>Plaintiffs,<br>v.<br>United States of America, et al.,<br>Defendants. | No. CV-25-02758-PHX-DWL<br>**ORDER** |

Pending before the Court is Plaintiffs' motion for stay. (Doc. 58.) For the reasons that follow, the motion is denied.

**RELEVANT BACKGROUND**

In July 2025, Plaintiffs filed this action in an effort to enjoin a land exchange involving 2,422 acres of federal land in the Tonto National Forest. (Doc. 1.) Among other things, Plaintiffs assert challenges under the Religious Freedom Restoration Act ("RFRA") and the Free Exercise Clause of the First Amendment. (*Id.* ¶¶ 101-28.)

In an August 17, 2025 order, the Court denied Plaintiffs' motion for a preliminary injunction and for an injunction pending appeal. (Doc. 45.) As relevant here, the Court explained that Plaintiffs' RFRA and Free Exercise claims are foreclosed by the Ninth Circuit's 2024 decision in *Apache Stronghold v. United States*, 101 F.4th 1036 (9th Cir. 2024) (en banc). (*Id.* at 7-9.) As for Plaintiffs' request for an injunction pending appeal, the Court added: "Although this is an important case of an unusual magnitude, involves sympathetic Plaintiffs, and raises some compelling equities, the Court does not construe

Rule 62(d) as authorizing an injunction pending appeal absent a stronger showing on the merits." (*Id.* at 19.)

Plaintiffs appealed to the Ninth Circuit. (Doc. 46.) In response, Defendants filed an unopposed motion to stay this action "at least until the merits panels decides the pending motions for an injunction pending appeal." (Doc. 48 at 2.) The stay request was granted. (Doc. 49.)

On March 13, 2026, the Ninth Circuit affirmed, confirming that Plaintiffs' "religious liberty claims . . . are foreclosed by precedent." *Arizona Mining Reform Coalition v. U.S. Forest Serv.*, 170 F.4th 879, 902-03 (9th Cir. 2026).[1] The Court also denied, as moot, Plaintiffs' request for an injunction pending appeal and dissolved an administrative stay it had previously issued, thus paving the way for the land exchange to go forward. *Id.* at 903.

Later that same day, the United States and Resolution Copper "completed the exchange of the lands specified in the Land Exchange Act." (Doc. 52 at 2.)

On March 14, 2026, Plaintiffs applied to the Supreme Court for an emergency injunction. (*Id.*)

On March 19, 2026, Justice Kagan denied the application. (*Id.*)

On March 27, 2026, the parties filed a joint status report. (Doc. 52.) Plaintiffs argued "that the case should remain stayed until conclusion of proceedings in the Ninth Circuit." (*Id.* at 5.) Defendants asked the Court to "lift the stay and resume proceedings on Plaintiffs' claims without delay." (*Id.* at 6.)

On March 30, 2026, the Court issued an order concluding that "the stay should remain in effect pending the resolution of Plaintiffs' anticipated petition for rehearing en banc. This approach will promote judicial economy and avoid the potential for inconsistent rulings. Additionally, continuation of the stay will not result in any prejudice to

---

[1] Although the opinion was later amended to include Judge Rawlinson's partial dissent, *Arizona Mining Reform Coalition v. U.S. Forest Serv.*, 172 F.4th 641 (9th Cir. 2026), the dissent agrees with the majority that Plaintiffs' religious liberty claims are "foreclosed by our precedent and recent Supreme Court rulings." *Id.* at 666 (Rawlinson, J., dissenting in part).

Defendants." (Doc. 53.)

On September 29, 2026, the Ninth Circuit denied Plaintiffs' petitions for rehearing and rehearing en banc. *Arizona Mining Reform Coalition v. U.S. Forest Serv.*, 192 F.4th 1200 (9th Cir. 2026).

On October 7, 2026, the mandate issued. (Doc. 56.)

On October 23, 2026, Plaintiffs filed the pending motion for stay. (Doc. 58.) The motion is now fully briefed (Docs. 59-61) and no party requested oral argument.

**ANALYSIS**

I. <u>The Parties' Arguments</u>

Plaintiffs ask the Court to "maintain[2] the stay of proceedings in this case pending disposition of Plaintiffs' [anticipated] certiorari petition to the United States Supreme Court." (Doc. 58 at 2.) Plaintiffs contend that "[t]he Government has already conveyed Oak Flat to Resolution Copper, and Resolution is already working on the mine. Thus, maintaining the stay doesn't stop Defendants from doing anything. By contrast, resuming proceedings now prejudices Plaintiffs by threatening to undermine Supreme Court review. Such prejudice is particularly harmful given the strong case for Supreme Court review." (*Id.* at 2.) Plaintiffs add: "A stay also promotes judicial economy. If this Court proceeds now, but the Supreme Court grants certiorari and reverses, much of this Court's work would be undone. By contrast, if the case remains stayed and the Supreme Court denies certiorari, no harm is done; the case can move forward as before." (*Id.*) Plaintiffs identify *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), as setting forth the relevant standard governing their stay request. (*Id.* at 5.)

---

[2] The March 30, 2026 order stated that the stay would "remain in effect pending the resolution of Plaintiffs' anticipated petition for rehearing en banc." (Doc. 53.) Because Plaintiffs' petition for rehearing en banc was denied on September 29, 2026, the stay expired that same day. Thus, contrary to Plaintiffs' argument in reply (Doc. 61 at 11 n.3), the Court was not required to issue a subsequent order lifting the stay—it already expired by its own terms. Given this backdrop, Plaintiffs' current motion is best conceptualized as a request for a new stay, not a request to "maintain" the existing stay (although that clarification has no bearing on the outcome). The Court notes that, due to administrative limitations, cases in which a stay of limited duration expires often remain flagged on the docket as "stayed" and continue to appear on CM/ECF with the bright yellow display the District of Arizona uses for stayed cases, as here. A delay in removing the stay designation from the docket does not affect the court-imposed limitation to the duration of the stay.

The Federal Defendants argue that a stay is unwarranted under *Landis* because "[t]here is more than a 'fair possibility' of harm to Federal Defendants" given that "the Forest Service is reasonably devoting taxpayer-funded agency resources to facilitating a project that Congress determined was in the public interest and which both this Court and the Ninth Circuit have ruled may move forward. If [Plaintiffs are] right that the land exchange is invalid and unconstitutional though, they are asking this court to delay beginning to resolve this case for potentially another year or more should the Supreme Court ultimately decline to intervene again, at which point the Forest Service will have invested even more resources that could have been used elsewhere for the benefit of the public." (Doc. 59 at 4-6.) In contrast, the Federal Defendants contend that Plaintiffs "will not suffer any hardship or inequity by having to litigate this case pending their filing of a petition for certiorari and the Supreme Court's determination of that petition" because "[b]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity within the meaning of *Landis*." (*Id.* at 6-7, cleaned up.) The Federal Defendants also assert that the claims are "weak on the merits and are unlikely to meet the standard for certiorari," noting that Plaintiffs raise claims "the Ninth Circuit already rejected three times," including one "on which Supreme Court denied rehearing," and suggest that "if [Plaintiffs] nevertheless obtained further review, then [Plaintiffs] could easily renew their request for a stay, and this Court could take that development into account. (*Id.* at 7-8.) Finally, as for "the orderly course of justice," the Federal Defendants argue that it weighs against a stay because had Plaintiffs "wished to proceed promptly and efficiently to the Supreme Court," they "should have asked the Ninth Circuit to stay the mandate, per Fed. R. App. P. 41(d)(1)" but "did not do so, even though the Ninth Circuit might have been better positioned to address whether a stay would be proper, particularly since the Ninth Circuit had considered and rejected [Plaintiffs'] petition for rehearing en banc." (*Id.* at 9, cleaned up.)

Resolution Copper also opposes the stay request, on largely the same grounds as the Federal Defendants. (Doc. 60.)

In reply, Plaintiffs summarize their position as follows:

> Defendants' responses are most notable for what they don't dispute. They don't dispute that this Court already found a stay of proceedings would "not result in any prejudice to Defendants" and would "promote judicial economy." They don't dispute that they remain free to proceed with the mine while this Court maintains the stay. They don't dispute that lifting the stay threatens to moot [Plaintiffs'] appeal and undermine Supreme Court review. They don't dispute that further review is supported by the opinions of fourteen Ninth Circuit judges and two justices, all of whom have sharply criticized *Apache Stronghold*. And they don't dispute that if the Supreme Court grants review and rejects *Apache Stronghold*, any work this Court does in the meantime under *Apache Stronghold* would need to be redone under a new legal standard. All this demonstrates why maintaining the stay pending Supreme Court review is warranted—just as Judge Logan maintained a stay pending Supreme Court review in *Apache Stronghold* itself.

(Doc. 61 at 2.)

As for Defendants' accusations of gamesmanship, Plaintiffs respond:

> Defendants argue that, instead of invoking this Court's equitable authority to stay the proceedings, [Plaintiffs] should have asked the Ninth Circuit to stay the mandate and should meet the standard for such a request. But Defendants confuse stays of the proceedings for the efficient management of a court's docket and stays that grant substantive equitable relief. As the federal government previously explained—and persuaded a federal court—a party seeking to stay proceedings pending a petition for certiorari "does not have to satisfy the requirements" for a stay of the mandate when it "is not seeking to stay injunctive relief" . . . . Importantly, neither Defendant argues that [Plaintiffs were] *required* to seek a stay of the mandate rather than proceed before this Court under *Landis*. And it wouldn't have made sense for [Plaintiffs] to do so. [Plaintiffs] had no injunctive relief in [their] favor, so there was no injunction in place for [Plaintiffs] to preserve with such a stay of the mandate. Issuance of the Ninth Circuit's mandate did nothing more than return jurisdiction to this Court—a result [Plaintiffs] had no need to delay.

(*Id.* at 10, citations omitted.)

## II. Analysis

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. Nonetheless, "while it is the prerogative of the district court to manage its workload, case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). When determining

whether to issue a *Landis* stay, courts must weigh "competing interests," which include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009). "If there is even a fair possibility that the stay will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity." *Percy v. United States*, 2016 WL 7187129, *2 (D. Ariz. 2016).

Beginning with the first *Landis* factor, Defendants' arguments regarding the damage they would suffer from the issuance of a stay are, in the Court's view, a bit overwrought. The land exchange has now occurred. The "ongoing project" (Doc. 60 at 6) is moving forward. The only way this lawsuit could interfere with that ongoing project is if the Court issued some form of injunctive relief. It is therefore difficult to see how staying this lawsuit—and thus eliminating, at least for the duration of the stay, the possibility of such injunctive relief—could possibly harm Defendants. And although Resolution Copper contends that the existence of ongoing litigation inherently creates "uncertainty" (*id.*), there will be ongoing litigation over the propriety of the land exchange regardless of how Plaintiffs' stay request is resolved—the stays in the two related cases also before the Court were recently lifted.

Turning to the second *Landis* factor, which concerns the hardship or inequity Plaintiffs would suffer in the absence of a stay, Plaintiffs acknowledge that "maintaining the stay doesn't stop Defendants from doing anything." (Doc. 58 at 2.) Plaintiffs thus advance a theory of harm that turns on how the absence of a stay may affect their chances of prevailing on their contemplated petition for certiorari. Although Plaintiffs don't spell out the inferential steps underlying this argument, they presumably go as follows: (1) if the

Court denies a stay, Defendants will immediately file a motion to dismiss the RFRA and Free Exercise claims; (2) the Court would be obliged to grant any such motion based on the Ninth Circuit's currently binding decisions in *Apache Stronghold* and *Arizona Mining Reform Coalition*; and (3) the resulting dismissal of the RFRA and Free Exercise claims would compel the Supreme Court to deny Plaintiffs' contemplated certiorari petition on mootness grounds.

Although this argument is creative, it is ultimately unpersuasive. As an initial matter, although anything is possible and the Court is wary of hazarding a guess as to how the Supreme Court will act on an as-yet-hypothetical certiorari petition, it seems unlikely the Supreme Court would grant certiorari on the issues Plaintiffs hope to raise, given that it recently voted to deny certiorari on quite similar issues and there has been no change to the composition of the Court since that vote. At any rate, even if the chain of events outlined above (i.e., the stay is lifted, Defendants move to dismiss, the Court grants the motion, and this outcome moots Plaintiffs' contemplated certiorari petition) came to pass, this would not *preclude* Plaintiffs from seeking Supreme Court review. At most, it would prevent them from using the order denying their motion for a preliminary injunction as their vehicle for seeking certiorari, such that they would instead need to use the (later) order dismissing their claims as the vehicle. In other words, lifting the stay would, at most, delay Plaintiffs' plan to pursue certiorari. But as discussed above, regardless of whether a stay is issued, Defendants will be allowed to continue working on the ongoing project. A period of delay in pursuing what appears to be a long-shot certiorari petition, where the work that Plaintiffs hope to stop will be allowed to proceed regardless of whether the stay is issued, does not strike the Court as a terribly compelling form of hardship or inequity.

Additionally or alternatively, Plaintiffs identify the alleged harm of being forced to divert their resources away from "appellate proceedings" and toward "potential motions practice before this Court." (Doc. 58 at 6.) Once again, this does not strike the Court as a particularly compelling argument. The RFRA and Free Exercise claims Plaintiffs seek to pursue have been foreclosed by Ninth Circuit precedent since 2024. Presumably, this is

why Plaintiffs attempted to file this action outside the Ninth Circuit, only for the district judge in the District of Columbia to transfer it to the District of Arizona while observing that Plaintiffs' actions "raise[d] the specter of forum-shopping." (Doc. 28 at 6.) At any rate, having voluntarily chosen to pursue those RFRA and Free Exercise claims, there is nothing inequitable about requiring Plaintiffs to defend them against the motions practice they would inevitably trigger.

Because the first and second *Landis* factors are a wash, the outcome turns on the resolution of the third *Landis* factor. The Court concludes this factor weighs against the issuance of a stay. As discussed above, it seems unlikely the Supreme Court will grant certiorari, Plaintiffs will have the opportunity to seek certiorari regardless of whether a stay is issued, and Defendants' ongoing work will proceed in the meantime regardless of whether a stay is issued. Under these circumstances, it would interfere with the orderly course of justice to require this case to remain stuck at the pleading stage even after Plaintiffs were given a full and fair opportunity to seek a preliminary injunction, to seek appellate review of the resulting denial of preliminary injunctive relief, to seek en banc review after the Ninth Circuit denied relief, and to seek an emergency injunction from Justice Kagan. The bottom line is that the time has come for this case to move forward.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for stay (Doc. 58) is **denied**. The stay is **lifted**.

**IT IS FURTHER ORDERED** that, because the stay has now expired, Defendants shall respond to the complaint by December 14, 2026.

Dated this 19th day of November, 2026.

Dominic W. Lanza
United States District Judge